**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ─────────────────────────────── x | |
| Shelby Franklin, individually and on behalf of all others similarly situated, | : |
| | : Case No. 2:21-cv-01781-JMA-AYS |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| | : |
| General Mills Inc. and Annie's Homegrown, | : |
| | : |
| | : |
| Defendants. | : |
| | : |
| | : |
| ─────────────────────────────── x | |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………………i

Table of Authorities……………………………………………………………..ii-viii

I.     INTRODUCTION……………………………………………………………1

II.    FACTUAL BACKGROUND………………………………………………2

III.   LEGAL STANDARD………………………………………………………3

IV.   ARGUMENT…………………………………………………………………4

       A.  The Complaint Plausibly Alleges Deception…………………………………...4

            1.   Whether a Reasonable Consumer Was Misled Is A Question of Fact………..4

            2.  Plaintiff's Allegations Easily Satisfy the Reasonable Consumer Test………..5

            3.  Defendant's Cases Are Inapposite To The Facts In the Instant Action………9

            4.  Plaintiff's Survey Supports Her Deception Claims…………………………12

       B.  Plaintiff's Omission Claims Are Not Preempted………………………………...13

       C.  Plaintiff Pleads Fraudulent Concealment, Breach of Warranty and Unjust Enrichment………………………………………………………………………17

            1.  Plaintiff Has Adequately Pled Her Fraudulent Concealment Claim………...17

            2.  Plaintiff Has Sufficiently Pled Her Warranty Claims………………………21

                a. Plaintiff has alleged a warranty…………………………………………21

                b. Plaintiff did not need to provide pre-suit notice…………………………..22

                c. Plaintiff's MMWA claim survives with state express warranty…………..23

            3.  Plaintiff Has Sufficiently Pled an Unjust Enrichment Claim………………24

V.     CONCLUSION………………………………………………………………25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola*,
   2010 WL 2925955 (E.D.N.Y. July 21, 2010) ......................................................... 15

*Adler v. Pataki*,
   185 F.3d 35 (2d Cir. 1999) .................................................................................... 25

*In re Annie's Mac & Cheese Litig.*,
   3:21-cv-02415-EMC (N.D. Cal.) ............................................................................ 23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 3

*Atik v. Welch Foods, Inc.*,
   2016 WL 11480151 (E.D.N.Y. Aug. 5, 2016) ....................................................... 21

*Axon v. Citrus World*,
   354 F. Supp. 3d 170 (E.D.N.Y. 2018) ............................................................ 21, 22

*Axon v. Florida's Nat. Growers, Inc.*,
   813 F. App'x 701 (2d Cir. 2020) .................................................................... passim

*Balser v. Hain Celestial Group, Inc.*,
   640 F. App'x 694 (9th Cir. 2016) ........................................................................... 6

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005) .............................................................................................. 14

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F. 3d 1225 (9th Cir. 2019) ............................................................................. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 3

*Bell v. Publix Super Markets, Inc.*,
   982 F.3d 468 (7th Cir. 2020) ................................................................................ 13

*Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
   369 F.3d 212 (2d Cir. 2004) .................................................................................. 17

*Bowring v. Sapporo U.S.A., Inc.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) .................................................................... 4

*In re BPA Polycarbonate Plastic Prods. Liab. Litig.*,
    2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) ...................................................................... 17

*Brady v. Basic Research, L.L.C.*,
    101 F. Supp. 3d 217 (E.D.N.Y. 2015) .................................................................................. 25

*Brumfield v. Trader Joe's Co.*,
    2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ...................................................................... 23

*Buonasera v. Honest Co., Inc.*,
    208 F. Supp. 3d 555 (S.D.N.Y. 2016) .................................................................................... 6

*Casey v. Odwalla, Inc.*,
    338 F. Supp. 3d 284 (S.D.N.Y. 2018) .................................................................................. 13

*Catalano v. BMW Of N. Am.*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016) .................................................................................. 20

*Catalano v. BMW of N. Am., LLC*,
    2016 WL 3406125 (S.D.N.Y. June 16, 2016) ...................................................................... 20

*Colangelo v. Champion Petfoods USA, Inc.*,
    2020 WL 777462 (N.D.N.Y. Feb. 18, 2020) ..................................................................... 6, 9

*Colella v. Atkins Nutritionals, Inc.*,
    348 F. Supp. 3d 130 (E.D.N.Y. 2018) .................................................................................. 16

*Corsello v. Verizon New York, Inc.*,
    967 N.E.2d 1177, 1185 (2012) ............................................................................................ 24

*De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*,
    520 U.S. 806 (1997) ............................................................................................................. 14

*De Sole v. Knoedler Gallery, LLC*,
    974 F. Supp. 2d 274 (S.D.N.Y. 2013) .................................................................................. 18

*Ebin v. Kangadis Food Inc.*,
    2013 WL 3936193 (S.D.N.Y. July 26, 2013) ...................................................................... 23

*Excevarria v. Dr. Pepper Snapple Grp., Inc.*,
    764 F. App'x 108 (2d Cir. 2019) ........................................................................................... 8

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ................................................................................................... 5

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ....................................................................... 7

iii

*Gaidon v. Guardian Life Ins. Co.*,
94 N.Y.2d 330 (1999) ........................................................................... 4

*Gasser v. Kiss My Face, LLC*,
2017 WL 4773426 (N.D. Cal. Oct. 23, 2017) .......................................... 6

*Gavilanes v. Gerber Prod. Co.*,
2021 WL 5052896 (E.D.N.Y. Nov. 1, 2021) .................................... 21, 22

*In re General Mills Glyphosate Litig.*,
2017 WL 2983877 (D. Minn. July 12, 2017) .................................. 10, 11

*George v. Starbucks Corp.*,
857 F. App'x 705 (2d Cir. 2021) .................................................... 9, 12

*George v. Starbucks Corp.*,
2020 WL 6802955, *2 (S.D.N.Y. Nov. 19, 2020) .................................. 12

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) .......................................... 4, 21, 22

*Gomez-Jimenez v. New York Law Sch.*,
943 N.Y.S.2d 834 (Sup. Ct. 2012) ...................................................... 19

*Gonzalez v. Costco Wholesale Corp.*,
2018 WL 4783962 (E.D.N.Y. Sept. 29, 2018) ...................................... 21

*Great Western Ins. Co. v. Graham*,
2020 WL 3415026 (E.D.N.Y. June 22, 2020) ....................................... 25

*Greene v. Gerber Prod. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) .................................................... 18

*Grossman v. Simply Nourish Pet Food Co. LLC*,
516 F. Supp. 3d 261 (E.D.N.Y. 2021) ................................................... 4

*Hesse v. Godiva Chocolatier, Inc.*,
463 F. Supp. 3d 453 (S.D.N.Y. 2020) ........................................... 24, 25

*Holt v. Foodstate, Inc.*,
2015 WL 9592534 (S.D. Cal. Dec. 31, 2015) ............................. 15, 16, 17

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
2010 WL 1734948 (S.D. Cal. Apr. 26, 2010) ....................................... 23

*Izquierdo v. Panera Bread Co.*,
450 F. Supp. 3d 453 (S.D.N.Y. 2020) .................................................... 8

*Johnson v. Organo Gold Int'l*,
  2016 WL 2771124 (D. Del. May 13, 2016).............................................................. 17

*Kacocha v. Nestle Purina Petcare Co.*,
  2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016) ......................................................... 9

*Kramer v. Time Warner Inc.*,
  937 F.2d 767, 774 (2d Cir. 1991)………………………………………………...4

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) .................................................................. 14

*Lee v. Sony BMG Music Entm't, Inc.*,
  557 F. Supp. 2d 418 (S.D.N.Y. 2008)................................................................... 3

*Leonard v. Abbott Labs., Inc.*,
  2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ......................................................... 5

*Lockwood v. Conagra Foods, Inc.*,
  597 F. Supp. 2d 1028 (N.D. Cal. 2009) ............................................................... 17

*Mantikas v. Kellogg Co.*,
  910 F.3d 633, 637 (2d Cir. 2018)………………………………………...……….8

*Manuel v. Pepsi-Cola Co.*,
  2018 WL 2269247 (S.D.N.Y. May 17, 2018) ...................................................... 15

*Marentette v. Abbott Lab'ys, Inc.*,
  886 F.3d 112 (2d Cir. 2018)................................................................................... 9

*McCarthy v. Dun & Bradstreet Corp.*,
  482 F.3d 184 (2d Cir. 2007).................................................................................. 3

*McCracken v. Verisma Sys., Inc.*,
  2017 WL 2080279 (W.D.N.Y. May 15, 2017)..................................................... 24

*Mills v. Giant of Md., LLC*,
  441 F. Supp. 2d 104 (D.D.C. 2006) ..................................................................... 17

*Nemphos v. Nestle Waters N. Am., Inc.*,
  775 F.3d 616 ......................................................................................................... 16

*Neri v. R.J. Reynolds Tobacco Co.*,
  2000 WL 33911224 (N.D.N.Y. Sept. 28, 2000)................................................... 22

*Newton v. Kraft Heinz Foods Co.*,
  2018 WL 11235517 (E.D.N.Y. 2018)................................................................... 13

v

*Niles v. Ariz. Bevs. United States LLC*,
  2021 U.S. Dist. LEXIS 135064 (E.D.N.Y. July 19, 2021) ................................... 15

*Nuss v. Sabad*,
  2016 WL 4098606 (N.D.N.Y. July 28, 2016) ...................................................... 24

*N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*,
  556 F.3d 114, 123 (2d Cir. 2009).......................................................................... 14

*Oden v. Boston Scientific Corp.*,
  330 F. Supp. 3d 877 (E.D.N.Y. 2018) ............................................................ 18, 19

*Orlander v. Staples, Inc.*,
  802 F.3d 289 (2d Cir. 2015).................................................................................... 4

*Parks v. Ainsworth Pet Nutrition, LLC*,
  2020 WL 832863 (S.D.N.Y. Feb. 20, 2020)................................................... 10, 11

*Parks v. Ainsworth Pet Nutrition, LLC*,
  377 F. Supp. 3d 241 (S.D.N.Y. 2019).................................................................. 15

*Patellos v. Hello Prod., LLC*,
  2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) .......................................................... 23

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  2003 WL 22052778 (S.D.N.Y. Sept. 3, 2003)........................................................ 7

*Pelman ex rel. Pelman v. McDonald's Corp.*,
  396 F.3d 508 (2d Cir. 2005)................................................................................ 6, 7

*In re Pepsico, Inc.*,
  588 F. Supp. 2d 527 .............................................................................................. 16

*Rodriguez v. Cheesecake Factory Inc.*,
  2017 WL 6541439 ........................................................................................... 24, 25

*Schubert v. City of Rye*,
  775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011)…………………………………………....4

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ............................................................ 14, 17

*Segedie v. Hain Celestial Grp., Inc.*,
  2015 WL 2168374 (S.D.N.Y. May 7, 2015) .......................................................... 6

*Shema Kolainu-Hear Our Voices v. ProviderSoft LLC*,
  832 F. Supp. 2d 194 (E.D.N.Y. 2010) ................................................................... 9

*Silva v. Smucker Nat. Foods*, Inc.,
   2015 WL 5360022, *10 (E.D.N.Y. Sept. 14, 2015)………………………………………22

*Solak v. Hain Celestial Grp., Inc.*,
   2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ........................................................ 8

*Stewart v. Riviana Foods Inc.*,
   2017 WL 4045952 (S.D.N.Y. Sep. 11, 2017) ...................................................... 14

*Tomasino v. Estee Lauder Companies Inc.*,
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) .................................................................. 23

*Truxel v. Gen. Mills Sales, Inc.*,
   2019 WL 3940956 (N.D. Cal. Aug. 13, 2019) ...................................................... 8

*Turek v. General Mills, Inc.*,
   666 F.3d 423 (7th Cir. 2011) ............................................................................ 16

*Warner v. StarKist Co.*,
   2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ..................................................... 24

*Yu v. Dr. Pepper Snapple Grp., Inc.*,
   2020 WL 5910071 (N.D. Cal. Oct. 6, 2020)....................................................... 10

**Statutes, Rules and Regulations**

21 C.F.R. § 101.100(a)(3)(iii) .............................................................. 12, 16, 17

21 U.S.C. § 343 .................................................................................. 14, 15, 16

21 U.S.C. § 343(a) ............................................................................................ 15

21 U.S.C. § 343(a)(1)......................................................................................... 15

21 U.S.C. § 343(g) ...................................................................................... 16, 17

21 U.S.C. § 343(q) ...................................................................................... 16, 17

21 U.S.C. § 343(r) ............................................................................................ 16

21 U.S.C. §343-1 ....................................................................... 14, 15, 16

21 U.S.C. §343-1(a) .................................................................................... 13, 14

21 U.S.C. § 343-1(a)(1) .............................................................................. 16, 17

21 U.S.C. § 343-1(a)(4) ................................................................................... 17

21 U.S.C. § 343-1(a)(5) ................................................................................... 16

21 U.S.C. § 343-1(a)(1)-(5) ........................................................................... 14

Fed. R. Civ. P. 8(a) .......................................................................................... 7

Fed. R. Civ. P. 15(a) ........................................................................................ 2

Fed. R. Civ. P. 8(d) ........................................................................................ 25

Plaintiff Shelby Franklin ("Plaintiff") respectfully submits this opposition to Defendants General Mills, Inc. and Annie's Homegrown's ("Defendants" or "Annie's") Motion to Dismiss ("MTD"). For the reasons set forth below, Defendants' motion should be denied in its entirety.

## I.     INTRODUCTION

Plaintiff filed this consumer class action against Defendants for their misleading marketing of various macaroni and cheese products under the Annie's Homegrown brand ("Products").[1] Defendants misleadingly label the Products so consumers believe they are healthy, safe and wholesome, while knowing they contain (or are at risk of containing) phthalates which is nowhere disclosed on the package. ¶2. Phthalates are dangerous chemicals that can pose significant health risks, including asthma, attention-deficit hyperactivity disorder, breast cancer, obesity and type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development and male fertility issues. ¶¶3, 4. The health risks of prenatal exposure are especially of great concern. ¶¶18, 20. Testing revealed the amount of phthalates in the Products is not insignificant. ¶51. Plaintiff's survey demonstrates that reasonable consumers of boxed macaroni and cheese consider it important to know if there are phthalates (or the risk of phthalates) in such products even in small amounts, which would affect their purchasing decisions. ¶¶44-45.

Defendants move to dismiss the Complaint on three major grounds. First, they contend that the Complaint fails to plausibly allege deception. However, under well-established Second Circuit precedent, viewed as a whole in context, Plaintiff's allegations plausibly allege deception and whether reasonable consumers would have been misled is a question of fact for the trier of fact. Indeed, Defendants' admissions on their own website regarding phthalates in the Products demonstrate that there are issues of fact that cannot be decided on this motion to dismiss and

---

[1] A full list of products is included in the Amended Complaint (hereinafter "Complaint" or "¶ _"), ¶1.

distinguish this case from those on which Defendants rely. Defendants' attempt to pick apart each statement and view it in isolation violates this Circuit's controlling standards. Second, Defendants contend that the omissions claims are preempted. However, Defendants incorrectly apply the relevant statutes that, when correctly applied, make it clear that Plaintiff's omissions claims are not preempted. Third, Defendants contend that Plaintiff fails to sufficiently state claims for fraudulent concealment, breach of warranty or unjust enrichment but those claims are properly pled under relevant standards.[2]

## II.     FACTUAL BACKGROUND

In 2017, the Coalition for Safer Food Processing and Packing (the "Coalition"), a national alliance of non-profits on food safety, published a study (the "Study") that tested cheese powder in ten varieties of boxed macaroni and cheese. ¶24. The Study found that the average phthalate levels in macaroni and cheese powder were more than four times higher than in hard block cheese and other natural cheeses that were tested. *Id.* In response, Defendants acknowledged their Products do contain phthalates, though have done so in a difficult to locate Frequently Asked Questions ("FAQ") section of their website, which is not referenced on the Products' packaging. ¶36. Defendants further admit on the website that: they are "troubled" by the reports of phthalates in macaroni and cheese; they "take this issue seriously"; phthalates are "widespread" in the supply chain; they are working to "eliminate" phthalates from their packaging; and that they intend to be "part of the solution" to eliminate phthalates. *Id.* Despite these admissions, Defendants do not disclose on the Products' packaging—the precise place consumers look—that the Products contain (or risk containing) phthalates. ¶43.

Since Defendants' overall marketing message is that the Products are healthy and

---

[2] Should the Court grant Defendants' MTD in any part, Plaintiff respectfully requests leave to amend, which "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

wholesome—including the packaging claims of "Homegrown," "Made with Goodness!," "No Artificial Flavors, Synthetic Colors or Preservatives," "Plant-Based Recipe," "Organic" and "Cheese from Cows Not Treated with rBST"—reasonable consumers would not believe Defendants are omitting the presence (or risk) of dangerous chemicals like phthalates in the Products. ¶¶10, 30. The risk of consuming phthalates from the Products is particularly great as the FDA has not yet set acceptable levels for phthalates, and the only current standard for exposure is the European Food Safety Authority ("EFSA") standard for **total daily intake**, illustrating the importance of consumers knowing their risk of cumulative exposure from any given product. ¶¶47, 50.

Reasonable consumers rely on packaging and look to included warnings or disclosures for information regarding the food's safety. ¶53. Defendants' decision to omit the presence (or risk) of phthalates from the Products' packaging misleads reasonable consumers to believe the Product is wholesome, safe and healthy, while remaining unaware they are exposing themselves and their family members to an increased cumulative exposure to phthalates. ¶47.

## III.   LEGAL STANDARD

A plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The standard "is heavily weighted in favor of the plaintiff," and the Court must "read a complaint generously." *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008).

3

## IV.     ARGUMENT[3]

### A. The Complaint Plausibly Alleges Deception

Defendants primarily argue that no reasonable consumer could be misled by the alleged misrepresentations. MTD at 8-9.[4] This should be rejected because under well-established Second Circuit precedent, viewed as a whole in context, Plaintiff's allegations allege deception.

### 1. Whether A Reasonable Consumer Was Misled Is A Question of Fact

Plaintiff's claims are governed by the reasonable consumer standard. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) ("objective definition of misleading" where the alleged act is "likely to mislead a reasonable consumer acting reasonably under the circumstances"). The "reasonable consumer inquiry is factual and in most instances, not resolved at the motion to dismiss stage." *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017); *see also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 345 (1999) ("[t]he issue before us is not whether, as a matter of law, reasonable consumers would be misled in a material way, but whether that prospect is enough to create a question of fact."); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 280 (E.D.N.Y. 2021) ("discovery is needed to determine whether a reasonable consumer would be deceived and this Court cannot conclude, as a matter of law, that plaintiff failed to state a claim under GBL §§ 349 and 350."); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014)

---

[3] Contemporaneously with its Motion to Dismiss, Defendants served a Request for Judicial Notice of the label for the Annie's Shells & Real Aged Cheddar Macaroni & Cheese Product. Defendants state that this label is "representative" of the labels of the other Products. Def. Request for Judicial Notice, at 3. Plaintiff does not oppose this request as the label is referenced in the Complaint. However, while the Court can view it for its content, it cannot and should not make factual rulings based on the challenged statements given that there are contested factual issues. *See Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (on a motion to dismiss "a court should generally take judicial notice 'to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted.'") (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

[4] Defendants make no challenge to the sufficiency of the pleading of Plaintiff's independent omissions claims, instead only arguing that they are preempted. That erroneous argument is addressed *infra* at Section IV.B. Thus, if the Court finds preemption is inapplicable, the omissions claims should not be dismissed.

(question of whether practice is misleading is usually "question of fact"). The appropriate inquiry is whether this case is one of the rare instances where the Court can find as a matter of law that no question of fact exists. As shown below, it is not.

### 2. Plaintiff's Allegations Easily Satisfy the Reasonable Consumer Test

Defendants pick apart Plaintiff's allegations and argue that each -- in isolation and out of context -- is either true or non-actionable puffery. *See* MTD at 14-16. Defendants' piecemeal approach violates this Circuit's standards articulated in the very cases they cite. Defendants' authorities hold that the package must be analyzed "as a whole" and that "context is crucial." *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).[5] "The relevant inquiry is not whether the statement is literally false. Rather, what is important in determining whether a statement is misleading is the over-all impression it tends to create on the public." *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *20 (E.D.N.Y. Mar. 5, 2012) (internal quotations and citations omitted).

Defendants' packaging, as a whole, conveys to consumers that the Products are healthy, safe, and wholesome when in fact they are not. *See, e.g.,* ¶¶2, 3. Plaintiff alleges that "Defendants tout [the] products as either Certified Organic or Made-with-Organic ingredients. . . They further tout their products as 'Homegrown' and 'Made with Goodness!' Defendants emphatically state 'No Artificial Flavors, Synthetic Colors or Preservatives' and that the Products are made from 'Cheese from Cows Not Treated with rBST.'" ¶10. Plaintiff also alleges, "[t]he Products are even organic with no artificial flavors, synthetic colors or preservatives. Thus, reasonable consumers would not think that Defendants are omitting the fact that they contain (or risk containing) dangerous chemicals like phthalates from the packaging." *Id.*

---

[5] The facts in *Axon* are inapposite to those here, as discussed below at Section IV.A.3.

These types of allegations routinely survive dismissal. *See, e.g.*, *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 559, 566 (S.D.N.Y. 2016) (denying motion to dismiss where complaint alleged that defendant "falsely, misleadingly, and deceptively labels its products as 'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!' when the products contain synthetic and toxic ingredients"); *Segedie v. Hain Celestial Grp., Inc.*, 2015 WL 2168374, at *12 (S.D.N.Y. May 7, 2015) (in foods labeled "natural," "[t]he alleged presence of synthetic ingredients [ ] brings the claim of deception into the realm of plausibility"); *Colangelo v. Champion Petfoods USA, Inc.*, 2020 WL 777462, at *10 (N.D.N.Y. Feb. 18, 2020) ("The fact that Plaintiffs do not allege that the dog food contained unsafe levels of heavy metals or BPA does not, at least at this stage, undermine the claim that the advertising was deceptive. Plaintiffs' claim is that these substances have 'known risks,' and that they would not have paid a premium for the products had they known they contained any level of heavy metals or BPA").[6]

This Circuit faced a similar situation in *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), in which it vacated the dismissal of a GBL § 349 claim. In *Pelman*, the plaintiffs had alleged that McDonald's misrepresented the healthfulness of its foods because "the combined effect of McDonald's various promotional representations. . . was to create the false impression that its food products were nutritionally beneficial and part of a healthy lifestyle if consumed daily." 396 F.3d at 510. The plaintiffs also alleged that McDonald's "failed adequately

---

[6] *See also, e.g.*, *Balser v. Hain Celestial Group, Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016) ("the statements that the products were 'natural' and '100% vegetarian' could be taken as a claim that no synthetic chemicals were in the products, a claim the complaint alleges, in detail, is false"); *Gasser v. Kiss My Face, LLC*, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017) ("the Court cannot conclude as a matter of law that a reasonable consumer would not interpret the '100% natural mineral advanced protection,' and '100% natural mineral hydrating defense' statements as meaning that all the ingredients in the Sunscreen and Sun Spray are natural, a representation which Plaintiffs plausibly allege is false. The term '100% natural mineral advanced protection' could confuse a reasonable consumer in regards to whether the 'natural mineral' content of the products is the only part that is 100% natural, or whether the entire product is 100% natural. In this context, the reasonableness of Plaintiffs' understanding of the word 'natural' is a question not appropriate for resolution on a motion to dismiss.").

to disclose that its use of certain additives and the manner of its food processing rendered certain of its foods substantially less healthy than represented." *Id.*[7] The plaintiffs further stated that they would not have purchased the products but for the misrepresentations in that they were "'led to believe[] that [McDonald's] foods were healthy and wholesome, not as detrimental to their health as medical and scientific studies have shown, … [and] of a beneficial nutritional value.'" *Id.* Because the plaintiffs adequately alleged under Fed. R. Civ. P. 8(a) liberal pleading requirements that McDonald's representations deceptively conveyed the overall message that its foods were nutritious and healthy when they were not, which allegedly caused the plaintiffs harm, the Second Circuit held that dismissal by the district court was in error. *Id.* at 511-12 & n.5. Here, as in *Pelman*, Plaintiff cites to numerous statements on the packaging of Annie's Mac & Cheese that collectively convey the message that the Product is healthy and wholesome, as discussed above, when in fact it is not because it contains (or risks containing) dangerous phthalates, a fact nowhere disclosed on the package. This satisfies plausibility for pleading deception.

Against this backdrop, Plaintiff has sufficiently alleged that the Products' packaging can mislead reasonable consumers. *See, e.g., In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) ("a reasonable consumer viewing the [ ] labels could reach a variety of conclusions about their potential for containing genetically modified ingredients" … "In short, the reasonable consumer inquiry is, in most instances, a factual one.").

Despite this prevailing case law, and the Second Circuit's requirement that statements must

---

[7] The District Court's opinion, which was later vacated by the Second Circuit, noted that McDonald's advertising campaigns touted its products as "'Good basic nutritious food. Food that's been the foundation of well-balanced diets for generations. And will be for generations to come.'" *Pelman ex rel. Pelman v. McDonald's Corp.*, 2003 WL 22052778, at *42 (S.D.N.Y. Sept. 3, 2003) (quoting the complaint). The plaintiffs also alleged that McDonald's represented that "it would be 'easy' to follow USDA and Health and Human Services guidelines for a healthful diet 'and still enjoy your meal at McDonald's.'" *Id.* In addition, the plaintiffs alleged that "McDonald's has described its beef as 'nutritious' and 'leaner than you think.'" *Id.* It also "described its french fries as 'well within the established guidelines for good nutrition.'" *Id.*

be analyzed as a whole and taken in context, Defendants impermissibly try to chop up the challenged representations and contend that each, standing alone, is insufficient. Defendants' arguments fail as to each contention. First, the word "Homegrown" in the name "Annie's Homegrown" conveys the overall impression that Annie's products are healthy and wholesome and free from dangerous chemicals. When viewed, as it must be, alongside Defendants' other representations, such as "Made with Goodness," "no artificial flavors, synthetic colors, or preservatives," "cheese from cows not treated with rbST," "Plant-Based Recipe," that the Products are made with organic ingredients, while displaying a "Bunny [seal] of Approval," ¶¶10, 30, 33, "Homegrown" is an affirmative fact assertion that could mislead a reasonable consumer.[8]

Second, the "Bunny of Approval" and "Made with Goodness" representations are not puffery. To the contrary, these representations reinforce Defendants' "health-conscious" marketing message particularly read in context with Defendants' various representations discussed above. *See, e.g.*, ¶¶9-11, 13, 31, 52-53; *see also* ¶¶33-35.[9] Even under Defendants' own authorities, these statements are not puffery -- they do not "vaguely[] assert that [Annie's mac & cheese] is better than its competitors' in a manner best 'understood as an expression of the seller's opinion

---

[8] Defendants' citation to *Axon*, 813 F. App'x at 705, proves this point. As discussed *infra*, the challenged statement there was solely the word "Natural" in the juice brand name "Florida's Natural" but there were no other challenged misrepresentations. Here, there are numerous statements alleged to create the overall impression that the Products are healthy, wholesome and safe, including the name "Annie's Homegrown." Moreover, Defendants' reliance on *Excevarria v. Dr. Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 110 (2d Cir. 2019) is misplaced. There, the court held that the use of "diet" in Diet Dr. Pepper was not misleading because "[n]one of the studies cited by the Complaint … establish a causal relationship between aspartame and weight gain." *Id.* at 110. Here, Plaintiff identifies published research showing that phthalates are dangerous and have been linked to serious health complications. *See* ¶¶4, 18-22.

[9] Defendants' reliance on *Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) is misplaced because "in reaching his conclusion, Judge Kahn relied heavily on the presence of an ingredients list on the package because it 'resolve[d] once and for all any ambiguity as to what [a consumer] should expect the bag to contain.'" *Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 464 (S.D.N.Y. 2020). But "[s]ince then, *Mantikas* [*v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018)] has made clear that 'a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth' elsewhere on the packaging." *Izquierdo*, 450 F. Supp. at 464. Moreover, *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) is inapplicable because there, the court found "that Plaintiffs cannot plausibly claim to be misled about the sugar content of their cereal purchases because Defendant provided them with all truthful and required objective facts about its products, on both the side panel of ingredients and the front of the products' labeling." Here, Defendants provide no such truthful, objective facts about phthalates on the packaging. *See, e.g.*, ¶2.

only." MTD at 14 (quoting *George v. Starbucks Corp.*, 857 F. App'x 705, 706 (2d Cir. 2021)). Instead, it is plausible that a reasonable consumer could interpret a "seal of approval" representation and "Made with Goodness!" as affirmative assertions of healthiness and safety of the Product. *See, e.g.*, *Colangelo*, 2020 WL 777462 at *8 ("…[C]ourts are more often reluctant to label claims non-actionable puffery—and thus rule that the statements cannot be deceptive—at the motion to dismiss stage.") (citing *Shema Kolainu-Hear Our Voices v. ProviderSoft LLC*, 832 F. Supp. 2d 194, 209 (E.D.N.Y. 2010) ("[W]hen a statement is not obviously puffing, the question of whether it is fact or opinion is 'almost always a question of fact for a jury's resolution.'")); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *17 (S.D.N.Y. Aug. 12, 2016) (on motion to dismiss, statement not mere puffery because "the Court cannot hold as a matter of law for § 349 purposes [the challenged statement] was not 'misleading in a material way'").

Lastly, Defendants misconstrue Plaintiff's allegations in arguing that Plaintiff's claims are preempted as to the "Organic" and "Made with Organic" claims on the Product. Plaintiff does not allege those claims are false. As such, *Marentette v. Abbott Lab'ys, Inc.*, 886 F.3d 112, 118 (2d Cir. 2018) has no relevance since there is no challenge to Defendants' organic representation. Instead, Plaintiff alleges that Defendants tout the Products as healthy, wholesome and safe despite the presence of harmful chemicals. When the Organic representations are viewed as a whole amongst all of the Product's representations, Defendants' packaging is misleading.

In sum, Defendants' attempt to pick off each statement individually is a violation of Second Circuit precedent and is nonetheless without merit.

### 3.  Defendants' Cases Are Inapposite To The Facts In The Instant Action

In arguing that Plaintiff has not plausibly alleged deception, Defendants cite primarily a line of cases that all rely on each other but are factually distinguishable from the instant matter.

*See* MTD at 9-12.[10] All of these cases alleged that a specific "natural" representation was misleading due to the presence of synthetic chemicals, either glyphosate or acetamiprid.[11] In each case, the court held that it was not plausible that a reasonable consumer would believe that the word "natural" meant that the product did not contain a trace amount of the synthetic chemicals. In other words, the alleged deception was limited solely to the use of the word "natural" which was not rendered misleading by the information on which the plaintiffs relied.

These facts are vastly different from the facts before this Court. First, Plaintiff's allegations are not limited to the use of the word "natural" because she pleads that the packaging and branding taken together -- through numerous specific statements (discussed *supra*) -- convey the overall message that the Products are healthy and wholesome and the presence or risk of dangerous phthalates is not disclosed on the package. *See, e.g.*, ¶¶9-12, 52. Whether these allegations are sufficient is a question of fact.

But there is more: what completely distinguishes this case from those cited by Defendants is the admissions on Annie's website about the presence of phthalates in the Products and the importance, and ability, to remove them. Not only do Defendants admit on Annie's website that the Products have been tested and contain phthalates, but that "[t]heir presence in the supply chain is … widespread." ¶36. More importantly, Defendants represent that they will "continue to work with our trusted suppliers **to eliminate ortho-phthalates** that may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder in our

---

[10] The cases are: *Axon*, 813 F. App'x 701; *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863 (S.D.N.Y. Feb. 20, 2020); *Yu v. Dr. Pepper Snapple Grp., Inc.*, 2020 WL 5910071 (N.D. Cal. Oct. 6, 2020); and *In re General Mills Glyphosate Litig.*, 2017 WL 2983877 (D. Minn. July 12, 2017).

[11] In *Axon*, 813 F. App'x at 703, the challenged statement was solely the word "Natural" in the orange juice brand name "Florida's Natural." In *Parks*, 2020 WL 832863, at *1, the challenged statement was solely the word "natural" on dog food packages. In *Yu*, 2020 WL 5910071, at *1, the challenged statements were the words "Natural" and/or "All Natural Ingredients" on apple juice and applesauce. In *General Mills*, 2017 WL 2983877, at *1, the challenged statement was "Made with 100% Natural Whole Grain Oats" on cereal bar products.

macaroni and cheese." *Id.* (quoting Annie's website) (emphasis added). Defendants further note that they seek to "be part of the solution." *Id.*[12] Thus, unlike in the cases cited by them, Defendants admit that phthalates are a "widespread" problem that needs a "solution"' and that it is necessary and entirely possible to "eliminate" phthalates from the Products at issue -- the very substance that Plaintiff contends is harmful and not disclosed on the package. Unlike in Defendants' authorities, these admissions raise issues of fact that cannot be decided on a motion to dismiss.[13]

While Defendants contend that they don't "add phthalates to the products" (MTD at 12), Plaintiff alleges that Defendants choose to manufacture the Products in a way so as to allow phthalates to enter the food. *See* ¶46. In other words, Defendants could manufacture the Products such that the phthalates do not enter the food; thus, their current procedure is the functional equivalent of "adding phthalates." Indeed, in the cases cited by Defendants, the chemicals at issue were in the food as a result of the growing process over which the defendants had no control. *See e.g.*, *Axon*, 813 F. App'x at 705-06. Here, Defendants have total control over the way in which they manufacture their Products as they admit on their website in stating that they can "eliminate" phthalates and are working to do so. ¶36. In addition, certain of Defendants' cases noted that the level of the chemical in the product was well below the level allowed by the government. *See, e.g.*, *Parks*, 2020 WL 832863, at *2 (citing similar language in *General Mills* and *Yu*). Here, as Defendants admit, the FDA has not set a standard for acceptable levels of phthalates in food products. *See* ¶28 (citing Annie's website).[14]

---

[12] Annie's website also states, "We are troubled by the recent report of phthalates found in dairy ingredients of macaroni and cheese and take this issue seriously." ¶42. If Defendants "take this issue [of the presence of phthalates] seriously" (even the small amount that they contend is present in the Products), surely they cannot credibly argue that their consumers would not reasonably do the same.

[13] Defendants admit the Annie's website states that the Products have been tested and contain some amount of phthalates, *see* MTD at 3, but do not respond to the Complaint's allegations regarding the foregoing admissions on the website, which themselves demonstrate there are factual issues requiring denial of Defendants' motion to dismiss.

[14] While Defendants contend that Plaintiff does not state the amount of phthalates in the Products, that there is only a trace amount of phthalates in their Products, and that the FDA allows a certain amount to migrate into food, Plaintiff

Defendants' reliance on *George*, 857 F. App'x 705, is also misplaced. The district court found in *George v. Starbucks*, 2020 WL 6802955, *2 (S.D.N.Y. Nov. 19, 2020), that Starbucks' statements that it uses high quality ingredients and promises a "perfect" coffee experience when many of its locations had bugs and it used a time-release pesticide which could cause health problems were puffery, but that the "no artificial dyes or flavors" statement was not. However, "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores." *Id.* The Second Circuit agreed that most of the statements were puffery and there was a fatal disconnect between the statements about the coffee and "the use of pesticide in Starbucks's stores." *George*, 857 F. App'x at 706. Here, both the misrepresentations and the dangerous chemical at issue relate to the food, thus distinguishing this case from *George*.[15]

### 4. Plaintiff's Survey Supports Her Deception Claims

Plaintiff conducted a survey of 400 adult consumers who bought boxed macaroni and cheese in the past six months and the vast majority, about 89.5%, answered that the presence or risk of even a small amount of phthalates in such a product would be either important or very important to their purchasing decisions. ¶¶44-45. Defendants concede that Plaintiff's survey provides evidence of materiality and that Plaintiff has adequately alleged materiality. *See* MTD at 16. An omission, representation, or practice is material if it is likely to affect the consumer's decision or conduct regarding a product or service. Here, proposed class members are alleged to have formed false beliefs about the Products at issue because of omissions and the false impression

---

alleges that "[t]esting of Plaintiff's Products reveal that the amount of phthalates present was not insignificant." ¶51. Given this allegation and Defendants' concession that phthalates are present, this is an issue of fact that cannot be resolved on a motion to dismiss. *See also infra* at Section IV.B.

[15] Notably, the district court's holding that the "no artificial dyes or flavors" statement could, if false, support a deceptive business practice claim under GBL § 349 (*see George*, 2020 WL 6802955, at *2), proves that a comparable statement ("No Artificial Flavors, Synthetic Colors or Preservatives") here supports such a claim. *See* ¶10.

created relating to the presence or lack thereof of phthalates. Survey allegations such as these bolster the plausibility of the deception allegations, as they provide additional factual evidence in support of a plaintiff's claims.

Even further demonstrating the plausibility of Plaintiff's deception allegations is that the survey results correspond with Defendants' statement on Annie's website expressing concern about phthalates and show that consumers are at least as (if not more) concerned about the presence of phthalates in boxed macaroni and cheese as Defendants. *See* ¶42 (Annie's website expressing concern that they "…are troubled by the recent report of phthalates found in dairy ingredients of macaroni and cheese and take this issue seriously."). Given Defendants' expressed concern, it defies logic to suggest that consumers should not be credited with their survey responses expressing the same concern. Plausible survey allegations should be accepted as true at the motion to dismiss phase. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 480-81 (7th Cir. 2020) (accepting consumer survey allegations and holding that "reasonable consumers' expectations. . . cannot be decided as a matter of law").[16]

### B. Plaintiff's Omission Claims Are Not Preempted

While Defendants do not contend that Plaintiff's misrepresentation claims are preempted, they argue that the omission claims are preempted by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343-1(a), which amended the Federal Food, Drug, and Cosmetic Act ("FDCA"). However, Defendants incorrectly apply the relevant statutes that, when correctly applied, make it clear that Plaintiff's omission claims are not preempted. As a threshold matter, the party seeking preemption "bear[s] the considerable burden of overcoming 'the starting

---

[16] Defendants' cases are inapposite. *See* MTD at 16-17 (citing *Axon*, 813 F. App'x 701; *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F. 3d 1225 (9th Cir. 2019); *Newton v. Kraft Heinz Foods Co.*, 2018 WL 11235517 (E.D.N.Y. 2018)). None involved the fact pattern here, where Defendants have conceded the materiality of Plaintiff's consumer survey allegations.

presumption that Congress does not intend to supplant state law.'" *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 296 (S.D.N.Y. 2018) (quoting *De Buono v. NYSA-ILA Med. and Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)); *N.Y. State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) ("where the text of a preemption clause is ambiguous or open to more than one plausible reading, courts 'have a duty to accept the reading that disfavors pre-emption.') (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, (2005)). Defendants have not met that burden.

First, Defendants ignore that the NLEA expressly exempts safety disclosures from preemption. Section 6(c)(2) of the NLEA, which was not codified, states that section 403A of the FDCA, 21 U.S.C. §343-1, "shall not be construed to apply to any requirement respecting a statement in the labeling of food that provides a warning concerning the safety of the food or component of the food." Pub. L. 101-535, section 6, 104 Stat. 2343 (1990). *See, e.g., Stewart v. Riviana Foods Inc*., 2017 WL 4045952, *5 (S.D.N.Y. Sep. 11, 2017) (citing *Krommenhock v. Post Foods, LLC,* 255 F. Supp. 3d 938, 955 (N.D. Cal. 2017) (stating that "a 'failure to warn' type of claim suggested by plaintiffs is not expressly preempted, absent evidence that consideration of this type of affirmative warning was the focus of the FDA's rulemaking.")); *see also Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 801 (N.D. Cal. 2015) ("Thus, the NLEA carves out an exemption from its express preemption clause where *warnings* concerning the safety of food or *component* of food are at issue." (emphasis in original)).

Second, as Defendants point out, the NLEA section on preemption "bars any state law requirements 'not identical' to the NLEA's corresponding label requirements." MTD at 18 (quoting 21 U.S.C. § 343-1(a)). But Defendants omit that the NLEA provision then lists, by references to its provision concerning "Misbranded Foods" (21 U.S.C. § 343), the specific areas in which states may not enact conflicting laws. 21 U.S.C. § 343-1(a)(1)-(5). The "Misbranded

14

Foods" section includes laws concerning a number of areas in which "a food shall be deemed mislabeled" including, *inter alia*, offer of sale under another name, imitation of another food, and nutrition information and content. *See* 21 U.S.C. § 343. Subsection (a) of 21 U.S.C. § 343 states that "a food shall be deemed mislabeled" if "its labeling is false or misleading in any particular[.]" 21 U.S.C. 343(a)(1). The NLEA *does not* include "false or misleading labels" or any reference to 21 U.S.C. § 343(a) in its list of expressly preempted areas. Moreover, the NLEA makes clear that the statute "shall not be construed to preempt any provision of State law unless such provision is expressly preempted under [section 341-1]." 21 U.S.C. 343-1 note; *see also Niles v. Ariz. Bevs. United States LLC*, 2021 U.S. Dist. LEXIS 135064, at *21 (E.D.N.Y. July 19, 2021); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 245 (S.D.N.Y. 2019). Accordingly, "plaintiffs may avoid the statute's preemptive force: '(1) if the plaintiffs' claims seek to impose requirements that are identical to those imposed by the FDCA; or (2) if the requirements plaintiffs seek to impose are not with respect to claims of the sort described in [the statute].'" *Niles*, 2021 U.S. Dist. LEXIS 135064, at *21 (quoting *Ackerman v. Coca-Cola*, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010)). Courts in this Circuit have routinely held that the NLEA does not apply to 21 U.S.C. § 343(a) and state law claims for false and misleading labels. *See, e.g., Parks,* 377 F. Supp. 3d at 245; *Manuel v. Pepsi-Cola Co*., 2018 WL 2269247, at *4 (S.D.N.Y. May 17, 2018) ("Significant here, the NLEA's Preemption provision does not apply to § 343(a), the FDCA's prohibition on false or misleading labeling.").

*Holt v. Foodstate, Inc.*, 2015 WL 9592534, *4 (S.D. Cal. Dec. 31, 2015), is instructive (denying motion to dismiss on preemption grounds because state laws regarding a "false or misleading label" are not expressly preempted by 21 U.S.C. § 343-1). *Holt* involved claims for a false and misleading label based on allegations that defendant's vitamin products contained

"'magnesium stearate, calcium stearate, or any other stearate/stearic acid' that 'may be harmful and undesirable to consumers' and which are not on Defendant's product's labels." *Id.* at *1. Based on the same federal regulations at issue here, the defendant contended that the claims were expressly preempted by the NLEA and 21 C.F.R. § 101.100(a)(3)(iii) – allowing magnesium stearate, calcium stearate, or any other stearate/stearic acid as "incidental additives" if "in insignificant amounts." *Id.* at *3. The *Holt* court held that the NLEA did not preempt state labeling requirements for false and misleading labels:

> The congressional notes point to the opposite conclusion: "[t]he Nutrition Labeling and Education Act [NLEA] of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act [codified as 21 U.S.C.A. § 343-1]." NLEA, PUB.L. NO. 101-535, § 6(c)(1), 104 Stat. 2353.
>
> The NLEA section on preemption, 21 U.S.C.A. § 343-1, states that "except as provided in subsection (b) of this section, no State... may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce" followed by a list of areas in which states may not enact laws in conflict with the federal laws. These areas of food labeling which are expressly preempted fall under 21 U.S.C.A. § 343's "Misbranded Foods" section. Included in this list are things such as offer for sale under another name, imitation of another food, misleading container, etc." **Noticeably absent from the express preemption section of 343-1, however, is "false or misleading label." Therefore, the Sherman Law, UCL, and FAL state law claims brought by Plaintiffs, which are predicated on the basis that Defendant's products' labels are either false or misleading, are not expressly preempted by the FDCA.**

*Id.* at *4 (emphasis added).

Defendants' authorities that held certain claims were preempted are inapposite. In those cases, the courts found the claims were preempted because they were expressly addressed in 21 U.S.C. § 343-1.[17] Notably, Defendants do not indicate which subsection of 21 U.S.C. § 343-1(a)

---

[17] *See Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 130, 131-32 (E.D.N.Y. 2018) (claims concerning nutritional content are expressly preempted by 21 U.S.C. 343-1(a)(5) which expressly incorporates laws concerning nutritional information in 21 U.S.C. § 343(q), 343(r)); *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624-26 (claims concerning levels of dental fluorosis expressly preempted by 21 U.S.C. § 343-1(a)(1) and 21 U.S.C. § 343(g) and

they contend preempts Plaintiff's claims. That is because, as noted in *Holt*, none applies.[18]

Not only are Plaintiff's claims not of the sort that are preempted by the NLEA, they also are not inconsistent with federal regulations. The federal regulation that exempts the disclosure of certain trace substances that migrate into food from contact materials specifically limits the exemption to incidental substances that are present "**at insignificant levels**." 21 C.F.R. § 101.100(a)(3)(iii) (emphasis added). Compliance with the regulation is thus dependent on the "incidental additives" being present at "insignificant levels." The regulation, however, does not define what constitutes an "insignificant" level. Whether the phthalates are present in "insignificant levels" is a question of fact not appropriate for determination on a motion to dismiss. *See Holt*, 2015 WL 9592534, at *4 ("whether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary state in the proceeding"); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (dismissal is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him or her to relief.") (internal citation omitted).

## C. Plaintiff Pleads Fraudulent Concealment, Breach of Warranty and Unjust Enrichment

### 1. Plaintiff Has Adequately Pled Her Fraudulent Concealment Claim

---

federal standards of identity for bottled water.); *Turek v. General Mills, Inc.*, 666 F.3d 423, 426-27 (7th Cir. 2011) (claims concerning nutritional content are expressly preempted by 21 U.S.C. 343-1(a)(5) which expressly incorporates laws concerning nutritional information in 21 U.S.C. §§ 343(q) and 343(r)); *In re Pepsico, Inc.*, 588 F. Supp. 2d 527, 532 (claims expressly preempted by 21 U.S.C. § 343-1(a)(1) which expressly incorporates 21 U.S.C. § 343(g) and the "standard of identity" for "purified drinking water"); *Mills v. Giant of Md., LLC*, 441 F. Supp. 2d 104, 108 (D.D.C. 2006) (claims expressly preempted by 21 U.S.C. § 343-1(a)(1) which expressly incorporates 21 U.S.C. § 343(g) and the "standard of identity" for milk and cream); *Johnson v. Organo Gold Int'l*, 2016 WL 2771124, *3 (D. Del. May 13, 2016) (claims for failure to provide accurate information about amount of Ganoderma Lucidum in coffee product preempted by 21 U.S.C. 343-1(a)(4) expressly incorporating 21 U.S.C. 343(q)).

[18] Defendants' reliance on *In re BPA Polycarbonate Plastic Prods. Liab. Litig.*, 2009 WL 3762965 (W.D. Mo. Nov. 9, 2009) is likewise misplaced. The case is an outlier whose reasoning has been expressly rejected by other courts considering the issue. *See Sciortino*, 108 F. Supp. 3d at 802 ("The Court disagrees with *In re BPA's* conclusion that a safety determination by the FDA precludes application of Section 6(c)(2), the NLEA's savings clause." (*citing Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028, 1033 (N.D. Cal. 2009) (observing "the NLEA — including the savings clause (no preemption unless the law is expressly preempted) — shall not be construed to affect preemption of food safety laws")).

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 314 (S.D.N.Y. 2013) (internal citations omitted). Defendants only challenge Plaintiff's ability to satisfy the first and fourth elements (duty/scienter).

A duty to disclose material facts arises: (1) where the parties are in a fiduciary relationship; (2) "under the 'special facts doctrine,' where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge"; or (3) where "a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 71 (E.D.N.Y. 2017). Plaintiff sufficiently alleges that "Defendants had superior knowledge or means of knowledge available to them and knew that Plaintiff and the Class would rely upon the representations and omissions of Defendants regarding the quality of its Products." ¶118.

Defendants do not contest that they possessed superior knowledge regarding the presence of phthalates in their Products, but rather attempt to suggest the information was publicly available to Plaintiff and this defeats a duty to disclose. MTD at 22 (citing *Oden v. Boston Scientific Corp.*, 330 F. Supp. 3d 877, 900 (E.D.N.Y. 2018)). *Oden* dealt with a medical device implanted in a plaintiff that allegedly caused pain, potentially suggesting a serious complication. *Id.* at 885. The court determined that the plaintiff did "not adequately plead facts that the information purportedly withheld was not otherwise available to [p]laintiff by reasonable inquiry via his physicians or other external sources of information" and thus there was no duty to disclose these facts. *Id.* at 900. The court referenced a product brochure and instructions for use included with the device containing a "list of complications [that] include many of the same risks alleged in the Complaint." *Id.* at 892.

18

But the present case is easily distinguishable from *Oden* as Plaintiff has pled facts that the information was not available by reasonable inquiry. *See* ¶118 ("[c]onsumers lack the meaningful ability to test or independently ascertain or verify whether a product contains phthalates, especially at the point of sale."). Defendants point to the Study and Annie's website's FAQ section as evidence that Plaintiff, through reasonable inquiry, could determine the risk that the Products contained phthalates prior to purchase. *See* MTD at 22. But Plaintiff alleges the difficulty in finding the FAQ section and that "this information is not listed on the Product page itself, nor is there any disclosure or denotation on the packaging or labels to check the FAQ section of Defendants' website." ¶36. Consumers are not required to scour the websites of the food products they purchase searching for a hidden FAQ page. Rather, reasonable consumers "rely on manufacturers like Defendants to be transparent and properly disclose on the packaging all material information regarding the Products and their safety." ¶8. And unlike the warnings included with the instructions of use and product brochure in *Oden*, here Plaintiff alleges there are no warnings regarding the risk of phthalates anywhere on the Products' packaging—the precise place consumers look to determine the safety of their food. ¶10. Plaintiff has thus satisfied the first fraudulent concealment element by adequately pleading facts that indicate Defendants possessed superior knowledge not readily available by reasonable inquiry.[19]

Defendants next incorrectly contend that Plaintiff fails to plead fraudulent intent. *See* MTD at 23. As Defendants note, Plaintiff can satisfy this requirement: "(a) by alleging facts to show that

---

[19] Defendants also cite *Gomez-Jimenez v. New York Law Sch.*, 943 N.Y.S.2d 834, 852 (Sup. Ct. 2012). There, the court noted that "the reasonable consumer of legal education must realize" the difficulties of the employment market and statements in the complaint that illustrated the oversaturated nature of the market (*id.* at 850-51), holding that "the complaint clearly establishes that plaintiffs had access to publicly available information pertaining to the realities of the legal job market." *Id.* at 852. This is a far cry from food products. While the reasonable consumer of any higher education must engage in a thorough analysis of whether to spend thousands of dollars on schooling, and certainly will research job prospects and not just rely on law school marketing materials, reasonable consumers of food products look to the packaging of that food for information regarding its safety.

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Catalano v. BMW Of N. Am.*, 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016). Plaintiff has alleged facts that "constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Plaintiff alleges that "[d]espite knowing their Products contain dangerous and harmful phthalates, Defendants do not provide any information whatsoever on the Product label to inform the consumers of this" and "after knowing of this significant hazard, it was not until years later that Defendants began to bury this significant information on the FAQ section of its website, which is not easy to find by parents, caregivers, or consumers." ¶36. Defendants further admit on the website that: they are "troubled" by the reports of phthalates in macaroni and cheese; they "take this issue seriously"; phthalates are "widespread" in the supply chain; they are working to "eliminate" phthalates from their packaging; and that they intend to be "part of the solution" to eliminate phthalates. *Id.* Despite these admissions, Defendants do not provide any information on the Product packaging—the precise place consumers look to determine the quality and safety of their food—to inform consumers that the Products contain (or risk containing) phthalates. ¶43. These allegations, coupled with the safety concerns surrounding ingestion of phthalates (¶49), are sufficient to "plead conscious misbehavior or recklessness to the extent necessary to give rise to a strong inference of fraudulent intent." *Catalano v. BMW of N. Am., LLC*, 2016 WL 3406125, at *4 (S.D.N.Y. June 16, 2016) ("*Catalano II*").[20]

---

[20] In *Catalano II*, 2016 WL 3406125, at *4, the court held that the plaintiffs satisfied their heightened pleading standard in their second amended complaint where the revised allegations noted that "Defendants were in exclusive possession and control of information relating to the alleged defects—including testing, internal memoranda and the rationale and decisions relating to its development and release of the SIBs, as well as information relating to the safety implications of the alleged defects—that it purposefully withheld from all outside third parties." As in *Catalano II*, Plaintiff alleges that Defendants are in control of their internal testing of their Products (¶38), are uniquely aware of the mechanism by which phthalates enter the Products (*id.* ¶46) and have kept that knowledge from consumers by omitting information regarding phthalates from the Product labels. ¶36.

### 2.    Plaintiff Has Sufficiently Pled Her Warranty Claims
#### a.    Plaintiff has alleged a warranty

Under New York law, breach of express warranty requires "'the existence of a material statement amounting to a warranty,' on which plaintiff relied." *Goldemberg*, 8 F. Supp. 3d at 482. Defendants argue only that Plaintiff did not identify any express warranty related to phthalates. As discussed *supra*, however, Plaintiff alleges that Defendants' statements on the Products' packaging—namely the "Homegrown" representation, that the Products contain "No Artificial Flavors, Synthetic Colors or Preservatives," are made from "Cheese from Cows Not Treated with rBST," are a "Plant-Based Recipe," are organic, and are "Made with Goodness!"— are affirmative assertions that would lead consumers to "reasonably believe[] that they are purchasing a product which is wholesome, safe and healthy for them and their children." ¶¶10, 30.

Courts in this district have denied motions to dismiss breach of express warranty claims involving similar statements. *See Gavilanes v. Gerber Prod. Co.*, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021) (denying motion to dismiss where baby food label gave indication that product was nutritionally sound, yet contained added sugars contrary to health recommendations)*; Gonzalez v. Costco Wholesale Corp.,* 2018 WL 4783962, at *9 (E.D.N.Y. Sept. 29, 2018) (plaintiff sufficiently pled facts in support of assertion that defendant breached "environmentally responsible" warranty by allegedly including toxic and hazardous ingredients in products); *Atik v. Welch Foods, Inc.,* 2016 WL 11480151, at *13 (E.D.N.Y. Aug. 5, 2016), report and recommendation adopted, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) (denying motion to dismiss when statements such as "the highest quality fruit proudly grown on family farms" in a "tradition of wholesome goodness," included on packaging "formed part of the basis of Plaintiffs' decision to purchase the Fruit Snacks," and Plaintiffs alleged "the Fruit Snacks are not healthy.").

Defendants cite *Axon v. Citrus World*, 354 F. Supp. 3d 170, 185 (E.D.N.Y. 2018), arguing

21

that the statements are "[g]eneralized" and not an express warranty regarding phthalates. However, they omit that the *Axon* court stated that "[g]eneralized statements by the defendant ... do not support an express warranty claim **if they are 'such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely**.'" *Id.* (quoting *Silva v. Smucker Nat. Foods*, Inc., 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015)) (emphasis added). Here, Plaintiff has alleged that the numerous statements at issue are assertions of fact on which a reasonable consumer could rely. In fact, *Silva* held that "[w]hat a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss." 2015 WL 5360022, at *10. Moreover, as discussed *supra*, the present case is easily distinguishable from *Axon* as Plaintiff's allegations reference not just a brand name, but numerous affirmative statements made on the packaging. *See* ¶¶10, 30. Lastly, the FDA notably has not set acceptable levels for phthalates in food, further distinguishing this action from *Axon*. *See* ¶50.[21]

### b.      Plaintiff did not need to provide pre-suit notice

Defendants argue that Plaintiff's breach of express warranty claim should be dismissed because she does not adequately plead pre-suit notice. *See* MTD at 24. However, there is a well-documented exception to the pre-suit notice requirement for retail purchases of products intended for human consumption. *See Neri v. R.J. Reynolds Tobacco Co.,* 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000) (recognizing "line of New York cases suggesting that the notice requirement does not apply to retail sales.") (internal citations omitted); *see also Gavilanes*, 2021 WL 5052896, at *7 (denying motion to dismiss stating, "despite Defendant's contentions, notice

---

[21] As shown *supra*, since Plaintiff has plausibly alleged misleading statements for her GBL claims, it is inappropriate to dismiss the breach of express warranty claims for failure to allege a material statement. *See Goldemberg*, 8 F.Supp.3d at 483 ("as the Court is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claim.").

requirements for breaches of warranty have long been jettisoned in New York state). Since this action involves the retail purchase of Products intended for human consumption, Plaintiff's breach of express warranty claim should survive regardless of whether there was pre-suit notice. *See In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 2010 WL 1734948, at *3 (S.D. Cal. Apr. 26, 2010) (notice not required under New York law for product intended for human consumption).

Further, should notice be deemed required, courts in the Second Circuit have recognized that under certain circumstances, pleadings can serve as notice. *See Patellos v. Hello Prod.*, *LLC*, 2021 WL 827769 (S.D.N.Y. Mar. 4, 2021) (first filed complaint satisfied notice requirement for surviving motion to dismiss); *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 262 n.6 (E.D.N.Y. 2014) ("New York cases applying N.Y. U.C.C. § 2–607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases") (internal citations omitted). Plaintiff filed her first complaint on April 1, 2021 [ECF Doc. 1], which put Defendants on notice of breach, prior to filing the current operative amended complaint on August 18, 2021.[22]

c.      **Plaintiff's MMWA claim survives with state express warranty**

The MMWA "incorporates and federalizes state-law breach of warranty claims, including state-law standards for liability and damages." *Ebin v. Kangadis Food Inc.*, 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013). Plaintiff's MMWA claim "stands[s] or fall[s]" with her state express warranty claim. *Brumfield v. Trader Joe's Co*., 2018 WL 4168956, at *4 (S.D.N.Y. Aug. 30, 2018) (citations omitted). Because the warranty claim survives, so does the MMWA claim.

---

[22] A pre-suit notice was sent to Defendants in a similar case that was filed in the Northern District of California, *In re Annie's Mac & Cheese Litig.*, 3:21-cv-02415-EMC (N.D. Cal.) ("CA Action"). Pre-suit notice in the California Action was sent on behalf of Pennsylvania Plaintiff Kathryn McCarthy on March 4, 2020 and New York Plaintiff Gabrielle Stuve on March 11, 2020.  Both are members of the putative class in this action. (Copies of the pre-suit notices are attached hereto as Exhibit A). The California Action has been stayed pending completion of class certification in the instant proceeding. CA Action, ECF No. 44.

### 3. Plaintiff Has Sufficiently Pled an Unjust Enrichment Claim

An unjust enrichment claim is not duplicative or redundant if a "reasonable trier of fact could find unjust enrichment … without establishing all the elements for one of [Plaintiffs'] claims sounding in law." *Nuss v. Sabad*, 2016 WL 4098606, at *11 (N.D.N.Y. July 28, 2016). Because the elements for an unjust enrichment to claim are distinct from the elements required under each of Plaintiff's other causes of action, and a reasonable trier of fact could find Defendants liable for unjust enrichment regardless of their liability for Plaintiff's other claims, the claim for unjust enrichment is distinct and survives Defendants' motion to dismiss.

Defendants cite two cases, *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 474 (S.D.N.Y. 2020) and *Rodriguez v. Cheesecake Factory Inc.*, 2017 WL 6541439, at *6 (E.D.N.Y. Aug. 11, 2017). Both rely on *Corsello v. Verizon New York, Inc.*, which held "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." 967 N.E.2d 1177, 1185 (2012). *Corsello*, however, is clearly distinguishable from the instant action. As the court in *Nuss v. Sabad*, explained:

> In *Corsello*, the harm that was complained of was the continued attachment of a telephone terminal box to the plaintiff's building. The plaintiff's claim for either trespass or inverse condemnation could not fail while still permitting an unjust enrichment claim: Verizon was either entitled to place their box on the building, or they were not.

2016 WL 4098606, at *11. Similarly, the elements of unjust enrichment differ from the GBL because the GBL requires "[p]roof that a defendant's acts are directed towards consumers" where a claim for unjust enrichment does not. *See Warner v. StarKist Co.*, 2019 WL 1332573, at *3 (N.D.N.Y. Mar. 25, 2019); *McCracken v. Verisma Sys., Inc.*, 2017 WL 2080279, at *8 (W.D.N.Y. May 15, 2017) (sustaining unjust enrichment because jury could find elements without establishing all elements for GBL § 349). Likewise, the elements for unjust enrichment are distinct from those for MMWA or breach of express warranty in that each of the latter claims requires the existence

24

of a material statement amounting to a warranty—a requirement not present in a claim for unjust enrichment. *See Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015).

For the same reasons, Plaintiff's claim for unjust enrichment is not duplicative, but rather a separate claim with separate elements, providing Plaintiff a remedy where no adequate remedy at law may exist. Plaintiff has pled: (1) that Defendants were enriched; (2) at Plaintiff's expense; (3) and that equity and good conscience militate against allowing Defendants to retain the benefit. ¶¶124-27. Should Plaintiff not be able to prove that Defendants' actions were directed at consumers, or that there was no warranty, for example, Plaintiff would be without an adequate remedy at law. But a trier of fact could still find that equity and good conscience militate against allowing Defendants to retain the benefit of Plaintiff's overpayments as the Products in question in this action pose potentially substantial health risks to consumers. ¶49.[23] This is distinguishable from *Rodriguez*, which involved excess tips to restaurant employees, and *Hesse*, which dealt with chocolate marketed as imported from Belgium but that in reality manufactured in the United States. *See* MTD at 25.  Finally, Rule 8(d) "offers sufficient latitude to construe separate allegations in a complaint as alternative theories." *Adler v. Pataki,* 185 F.3d 35, 41 (2d Cir. 1999).[24]

## V.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss should be denied.

Dated: January 25, 2022                          Respectfully submitted,

                                                 **THE SULTZER LAW GROUP P.C.**
                                                  /s/*Jason P. Sultzer*
                                                 Jason P. Sultzer, Esq.
                                                 Joseph Lipari, Esq.

---

[23] *See Great Western Ins. Co. v. Graham*, 2020 WL 3415026, *34 (E.D.N.Y. June 22, 2020) ("because I can 'conceive of [a] circumstance in which [plaintiff's tort] claim[s] would fail yet they would still be entitled, in equity and good conscience, to restitution,' … dismissing this claim as duplicative would be premature") (internal citation omitted).
[24] Defendants' argument that Plaintiff's claim for unjust enrichment should be dismissed under the reasonable consumer standard because it "is based on the same conduct as" GBL claims (MTD at 25), is without merit, because, as discussed *supra*, Plaintiff has adequately alleged deceptive conduct.

Daniel Markowitz, Esq.
Mindy Dolgoff, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com
dolgoffm@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
David C. Magagna Jr.
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Tel: (215) 592-1500
Fax: (215) 592-4663
CSchaffer@lfsblaw.com
dmagagna@lfsblaw.com

**CALCATERRA POLLACK LLP**
Janine L. Pollack, Esq.
Michael Liskow, Esq.
1140 Avenue of the Americas, 9th Floor
New York, New York 10036
Tel: (212) 899-1760
Fax: (332) 206-2073
jpollack@calcaterrapollack.com
mliskow@calcaterrapollack.com

**GEORGE GESTEN MCDONALD, PLLC**
David J. George, Esq.
Brittany Brown, Esq.
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Tel: (561) 232-6002
Fax: (888) 421-4173
DGeorge@4-justice.com
BBrown@4-justice.com
EService@4-justice.com

**GEORGE GESTEN MCDONALD, PLLC**
Lori G. Feldman, Esq.
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520

26

Tel: (917) 983-9321
Fax: (888) 421-4173
LFeldman@4-justice.com
EService@4-justice.com

**LOCKRIDGE GRINDAL NAUEN**
**P.L.L.P.**
Rebecca A. Peterson
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
rapeterson@locklaw.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Alec M. Leslie
888 7th Avenue
New York, NY 10019
Tel:  (646) 837-7150
Fax:  (212) 989-9163
jarisohn@bursor.com
aleslie@bursor.com


*Counsel for Plaintiff and the Class*

27