**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Shelby Franklin and Gabrielle Stuve, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-01781-JMA-AYS |
| Plaintiffs, | |
| v. | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| General Mills Inc. and Annie's Homegrown, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs, Shelby Franklin and Gabrielle Stuve (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1. This action seeks to remedy the deceptive and misleading business practices of General Mills, Inc. and Annie's Homegrown ("General Mills" or "Annie's" or "Defendants") with respect to the marketing and sale during the applicable statute of limitations of their macaroni and cheese products that are sold with a cheese packet (excluding vegan varieties), and their canned Organic Cheesy Ravioli, throughout the State of New York and the entire country (hereinafter the "Products"), which include but are not limited to:

- Shells & White Cheddar Mac & Cheese
- Shells & Real Aged Cheddar Mac & Cheese

- White Cheddar Mac & Cheese Microwavable Cups
- Real Aged Cheddar Mac & Cheese Microwavable Cups
- Organic Shells & White Cheddar Mac & Cheese
- Classic Cheddar Mac & Cheese
- Organic Classic Cheddar Mac & Cheese
- Organic Shells & Real Aged Cheddar Mac & Cheese
- Organic Macaroni & Cheese Classic Cheddar Cheese with 12g Protein
- Gluten Free Rice Pasta & Cheddar Mac
- Rice Pasta Shells & White Cheddar
- Red Lentil Spirals & White Cheddar
- Organic Shells & White Cheddar Mac & Cheese with Whole Grains
- Organic Farm Friends & Cheddar Mac & Cheese
- Organic Grass Fed Shells & White Cheddar Mac & Cheese
- Organic Grass Fed Shells & Real Aged Cheddar Mac & Cheese
- Organic Mac & Bees Mac & Cheese; Mac & Trees Mac & Cheese
- Quinoa Rice Pasta & White Cheddar
- Reduced Sodium Mac & Cheese
- Organic Peace Pasta & Parmesan Mac & Cheese
- Spirals With Butter & Parmesan
- Organic Alfredo Shells & Cheddar Mac & Cheese
- Penne & Four Cheese Mac & Cheese
- Bunny Pasta with Yummy Cheese Mac & Cheese
- Organic Grass Fed Classic Cheddar Mac & Cheese

- Organic Cheesy Ravioli.[1]

2. Defendants have improperly, deceptively and misleadingly labeled and marketed their Products to reasonable consumers, like Plaintiffs, by labeling, touting and marketing their Products as being healthy and wholesome while knowing, but omitting and not disclosing to consumers on the Products' packaging, that the Products contain (or risk containing) "ortho-phthalates," also known as "phthalates." Phthalates are harmful chemicals, and their consumption carries a real risk of adverse health impacts.

3. Phthalates are dangerous and harmful chemicals when consumed, especially by pregnant women and children. Phthalates are endocrine disrupting chemicals that have been associated with adverse health effects, particularly in relation to early life exposures. They interfere with the body's natural levels of certain hormones, including estrogen and testosterone, among others.[2] Exposure to endocrine disruptors, like phthalates, can have particularly serious effects even if exposed at low levels. In fact, researchers have proved that counter to the usual assumption that higher exposure leads to greater harm, low dose exposure to phthalates can have even more serious effects than at higher levels.[3]

4. In the past few years, scientists and researchers have linked phthalates to asthma, attention-deficit hyperactivity disorder, breast cancer, obesity and type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development and male fertility issues.[4]

---

[1] Defendants periodically introduce and remove products from the market over time. All Annie's products that fall within the Class definition of "Products" during the statute of limitations are included herein, whether or not listed.
[2] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed March 20, 2024).
[3] *Id.*
[4] https://www.theguardian.com/lifeandstyle/2015/feb/10/phthalates-plastics-chemicals-research-analysis. (last accessed March 20, 2024).

5. The phthalates enter the Products from packaging and machines used to make the Products.

6. According to the CDC, "[P]eople are exposed to phthalates by eating and drinking foods that have been in contact with containers and products containing phthalates.[5]

7. Reasonable consumers, like Plaintiffs, reasonably and implicitly trust manufacturers like Defendants, especially ones that market their food as healthy and wholesome, to sell food that is safe, healthy and free from harmful toxins, contaminants, and chemicals. Reasonable consumers, like Plaintiffs, certainly expect the food they eat and feed their family (especially children) to be free from phthalates, substances known to have health consequences. If such substances are contained in, or risk being contained in, the food sold by a manufacturer like Defendants, reasonable consumers like Plaintiffs expect that this will be disclosed on the products' packaging so that they can have full and fair information to decide for themselves whether they want to consume the product and the amounts they want to consume of the product.

8. Consumers, including Plaintiffs, lack the scientific knowledge necessary to determine whether the Products do in fact contain (or have a risk of containing) phthalates, or to ascertain the true nature of the quality of the Products. As such, reasonable consumers must and do rely on manufacturers like Defendants to be transparent and properly disclose on the packaging all material information regarding the Products and their safety.

9. Defendants manufacture, sell, and distribute the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers and touting their products as healthy, wholesome, and organic.

[5] https://www.cdc.gov/biomonitoring/Phthalates_FactSheet.html (last accessed March 20, 2024).

10. For example, Defendants state on the packaging that their products are either Certified Organic or Made-with-Organic ingredients. Defendants further tout their Products on the packaging as "Homegrown." The phrase "Made with Goodness!" is prominently featured in a green box that lists under it, "No Artificial Flavors or Synthetic Colors" and some of the packaging also states in the "Made with Goodness" box that there are No Preservatives. The Products also state in that same box on the packaging that they are "Made with Goodness" because they contain "Cheese from Cows Not Treated with rBST," or "Organic cheese from cows raised without antibiotics or synthetic hormones." Moreover, the packaging for many of the Annie's mac & cheese Products contain the words "Made with Real Cheese" or "Real Cheese." The foregoing claims about the cheese are also misleading because, far from being a healthy aspect of the Products as portrayed by Defendants, the packet of dried cheddar cheese is introducing dangerous phthalates into the Products. Defendants also use a cute bunny as a "mascot," which appears on the Products, along with a "Bunny of Approval" or "Rabbit of Approval." This is especially troubling in light of Defendants' marketing towards children.

11. Defendants' marketing and advertising campaign includes the one place that every consumer looks when purchasing a product – the packaging and labels themselves. As such, a reasonable consumer reviewing Defendants' label reasonably believes that they are purchasing a product which is wholesome and healthy for them and their children, leading consumers to believe the Products are a safe food. Indeed, nowhere on the Products' packaging or labeling is there any disclosure of the inclusion (or material risk of inclusion) of phthalates. In fact, the overall marketing message by Defendants is that the Products are wholesome and healthy. Thus, reasonable consumers would not think that Defendants are omitting the fact that they contain (or risk containing) dangerous chemicals like phthalates from the packaging.

12. The following are examples of the packaging of the Products:


BUNNY OF APPROVAL
Annie's
ORGANIC
Shells & Alfredo Cheddar
MACARONI & CHEESE
Made with goodness
✓ No artificial flavors or synthetic colors
✓ Organic cheese from cows raised without antibiotics or synthetic hormones*
USDA ORGANIC
Organic non GMO


CERTIFIED ORGANIC
Annie's
HOMEGROWN
Organic
Shells &
White Cheddar
MACARONI & CHEESE
Made with Goodness!
No Artificial Flavors, Synthetic Colors or Preservatives
Organic Cheese from Cows Raised without Antibiotics or Synthetic Hormones
Certified Organic Ingredients are Grown without Persistent Pesticides
USDA
ORGANIC
non GMO
NET WT 6 OZ (170 g)


BUNNY OF APPROVAL
Annie's
. ORGANIC .
Cheesy Ravioli
USDA ORGANIC
CHEESE RAVIOLI IN TOMATO & CHEESE SAUCE
non GMO
Made with goodness
✓No artificial flavors or synthetic colors
✓Cheese from cows not treated with rBST*
Nutrition Facts
About 2 servings per container
Serving size 1 cup (242g)
Calories 180 310


BUNNY OF APPROVAL
Annie's
GLUTEN FREE
Rice Pasta
& Cheddar
REAL CHEESE!
Made with goodness
✓No artificial flavors or synthetic colors
✓Cheese from cows not treated with rBST*




13. Defendants' advertising and marketing campaign, however, is false, deceptive, and misleading because, far from being healthy and wholesome, the Products contain (or risk containing) phthalates which are dangerous to one's health and well-being.

14. Plaintiffs and those similarly situated ("Class Members") reasonably relied on Defendants' misrepresentations and omissions that the Products are healthy and wholesome when purchasing the Products when, in fact, they contain (or risk containing) dangerous phthalates.

15. Plaintiffs and Class Members paid a premium for the Products based upon Defendants' health-conscious marketing and advertising campaigns including their false and misleading representations and omissions on the Products' labels.

16. Given that Plaintiffs and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are healthy and wholesome and their omission that the Products were not safe because they contained or were at risk of containing dangerous phthalates, Plaintiffs and Class Members suffered an injury in the amount of the premium paid.

17. Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350. Defendants also breached and continue to breach warranties regarding the Products. Defendants also engaged in negligence per se. In addition, Defendants have been and continue to be unjustly enriched.

18. Accordingly, Plaintiffs bring this action against Defendants on behalf of themselves and Class Members who purchased the Products during the applicable statute of limitations periods (the "Class Period").

## FACTUAL BACKGROUND

19. Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food products that they and their family members consume. Companies such as Defendants have capitalized on consumers' desire for healthy and safe products, and indeed consumers are willing to pay, and have paid, a premium for these products. Consumers lack the scientific knowledge and the meaningful ability to test or independently ascertain or verify whether a product contains phthalates or other unsafe and unhealthy substances, especially at the point of sale, and therefore must and do rely on Defendants to be transparent and truthfully and honestly disclose on the packaging all material information regarding the Products and their safety including reporting what their Products contain (or are at the risk of containing).

20. Many recent studies have linked prenatal exposure to phthalates with neurodevelopment deficiencies in children, including ADHD, deficits in executive function,

problems with conduct and aggression, depression, deficits in child IQ, and other adverse impacts on cognitive and psychomotor development.[6]

21. Researchers at Mount Sinai linked phthalate exposure to obesity. Specifically, the researchers found that in overweight girls aged 6-8 "the higher the concentration of certain phthalates (including low molecular weight phthalates) in their urine, the higher their body mass index."[7]

22. Prenatal exposure to phthalates has been associated with several serious and adverse effects on children's physical and mental development. Studies have indicated that prenatal exposure to phthalates is linked to smaller genitals, incomplete descent of testicles and increased risk of testicular cancer.[8] Researchers at Columbia University linked prenatal exposure to motor delays and behavior problems.[9] Another study conducted by a Columbia University researcher studied the effect of phthalate exposure on children from fetus to school-age and found that "children that were exposed to high concentrations of phthalates in the womb were 70% more likely to develop asthma between the ages of five and 12."[10] Some studies have also shown associations between a child's exposure to phthalates and asthma, allergies and bronchial obstruction.[11] A study recently published in the Lancet found that "exposure to DEHP, DiDP,

---

[6] *See* Engel, SM, Patisaul, SB, Brody, C, Hauser R, Zota, AR, Bennet , DH, Swanson, M, and Whyatt, RM, Neurotoxicity of Ortho-Phthalates: Recommendations for Critical Policy Reforms to Protect Brain Development in Children. American J. of Public Health, April 2021 available at https://ajph.aphapublications.org/doi/10.2105/AJPH.2020.306014 (last accessed March 20, 2024); *see also* http://projecttendr.com/chemicals-and-pollutants/phthalates/ (last accessed March 20, 2024); https://www.ewg.org/news-insights/news-release/study-shows-mounting-evidence-plasticizer-chemicals-harm-fetus (last accessed March 20, 2024).

[7] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed March 20, 2024).

[8] *Id.*

[9] *Id.*

[10] *See* https://www.theguardian.com/sustainable-business/2014/sep/17/health-asthma-plastic-pregnancy-children-home-phthalates (last accessed March 20, 2024).

[11] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed March 20, 2024).

DiNP, and DnOP were associated with decreased gestational age and increased risk of preterm birth, suggesting substantial opportunities for prevention."[12]

23. Researchers at the Ichan School of Medicine at Mount Sinai also found that "higher levels of exposure to phthalates during gestation were associated with aggression, rule-breaking, and conduct problems for males."[13]

24. Recognizing the harmful effects of exposure to phthalates, in 2008, Congress banned several phthalates from children's toys and childcare articles.[14] In 2006, the European Union banned the use of six phthalates used in certain children's toys.[15] Fourteen other countries, including Japan, Argentina, and Mexico, had also banned phthalates from children's toys prior to the U.S.[16]

25. Food and diet are significant exposure pathways for phthalates. Phthalates have been shown to leach into food from plastic equipment used in food processing and preparation as well as in food packaging materials.[17] Recognizing that food is a major source of exposure, one 2014 study undertook to identify primary foods associated with increased exposure to phthalates. The study explained that "diet was the most significant pathway for exposures to [the phthalates known as] DEHP, DiNP, and DiDp."[18] This study found that foods that are higher in fat are contaminated at a greater degree and that diary, and cheese in particular, was a major food source

[12] https://www.thelancet.com/journals/lanplh/article/PIIS2542-5196(23)00270-X/fulltext (last accessed March 20, 2024).
[13] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed March 20, 2024).
[14] *See* https://www.cpsc.gov/Business--Manufacturing/Business-Education/Business-Guidance/Phthalates-Information (last accessed March 20, 2024).
[15] *See* https://www.center4research.org/phthalates-childrens-products/ (last accessed March 20, 2024).
[16] *Id.*
[17] *Id.*
[18] Serrano SE, Braun J, Trasande L, Dills R, Sathyanarayana S (2014), Phthalates and diet: a review of food monitoring and epidemiology data. Environmental Health 13:43, available at https://ehjournal.biomedcentral.com/articles/10.1186/1476-069X-13-43 (last accessed March 20, 2024).

for exposure to phthalates, particularly the phthalate DEHP which is "among the most potent phthalate species for reproductive development."[19]

26. In 2017, the Coalition for Safer Food Processing and Packing (the "Coalition"), a national alliance of non-profit organizations concerned about human health, food safety and social justice, published a study (the "Study") that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese.[20] The Study found that macaroni and cheese powder had the highest level of phthalates of all of the products tested and that all ten varieties of the macaroni and cheese products tested contained phthalates.[21] The Study further found that the average phthalate levels in macaroni and cheese powder were more than 4 times higher than in the hard block cheese and other natural cheeses that were tested.[22]

27. Moreover, DEHP, which is the most widely restricted phthalate, was the most prevalent of all phthalates detected and was present in a much higher concentration than any other phthalate.[23]

28. Following the Study, the Coalition sent a letter to the Chief Executive Officer of the Kraft Heinz Company ("Kraft"), the leading seller of macaroni and cheese in the U.S., asking him to "eliminate toxic industrial chemicals known as *ortho*-phthalates from your food products."[24] The letter explained that food is "often the number one source of phthalates exposure" and that fatty foods, including dairy products, appear to be "the greatest contributor of dietary exposure to phthalates."[25] The letter also highlighted the exposure to phthalates poses serious health concerns to "developing brain and male reproductive organs during pregnancy" and that

---

[19] *Id.*
[20] *See* http://kleanupkraft.org/data-summary.pdf (last accessed March 20, 2024).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] https://www.kleanupkraft.org/kraft-phthalates-6-14-17.pdf (last accessed March 20, 2024).
[25] *Id.*

"[s]tudies in children have linked prenatal exposure to some phthalates with neurodevelopmental problems including attention deficit hyperactivity disorder (ADHD)-like behavior, antisocial behavior (e.g., aggression and depression), and poor learning and memory."[26]

29. In a July 20, 2017, statement, the Coalition acknowledged that Kraft responded to its letter but stated: "[t]his serious public health risk stems from daily exposure to phthalates from all sources combined. This is what's known as an unacceptable 'cumulative risk.' Kraft asserts that the amount of phthalates in the products we tested is many times 'lower than levels that scientific authorities have identified as acceptable.' What Kraft didn't say is that the only acceptable levels that exist apply to the total daily intake of phthalates from all sources combined, not from any single product. With phthalates found in some dairy products, baked goods, oils, infant formula, fast food, consumer products, house dust – together, these daily exposures add up to too much."[27]

30. On January 4, 2024, Consumer Reports published the findings of its investigation into the presence of dangerous substances such as phthalates in popular foods available in supermarkets.[28] It found that one of the highest levels of phthalates existed in Defendants' canned Annie's Organic Cheesy Ravioli product, which contained 53,579 nanograms of phthalates per serving.[29]

---

[26] *Id.*
[27] https://www.toxicfreefood.org/wp-content/uploads/2018/10/CoalitionStatement7-20-2.pdf (last accessed March 22, 2024).
[28] https://www.consumerreports.org/health/food-contaminants/the-plastic-chemicals-hiding-in-your-food-a7358224781/ (last accessed March 20, 2024).
[29] *Id*.

31. Following the release of its report, on February 7, 2024, Consumer Reports sent a letter to Defendant General Mills, calling on it to reduce concerning levels of phthalates in its products.[30]

32. The following were posted on Annie's website thereafter[31]:

FabulousPhil

Review 1

Votes 4

Age 35+

★☆☆☆☆

**Too bad Annie's isn't safe and healthy anymore**

5 months ago

I like Annie's products generally...but when I learned an independent study found over 50,000 nongrams of phthalates in the Annie's Ravioli I have become very concerned about their other products. Annie's reputation is on the line, and if they only respond with artificial responses like "we're concerned and want to be part of the solution..." blech... pull the product from the shelves, respect your consumer, and really bring a healthier and safer Ravioli, or mac n cheese or whatever back to the shelves. I am rethinking buying any of their products because of the study, but also because of their lack of real response to a serious alogation.

Helpful? (4) (0) Report

Response from Annie's: 5 months ago

Annies

Food integrity and consumer trust are at the core of Annie's values. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements. Please be assured, that we are committed to learning more to better understand this emerging issue and determine how Annie's can be a part of the solution.

---

[30] https://advocacy.consumerreports.org/press_release/consumer-reports-calls-on-general-mills-to-reduce-concerning-levels-of-plastic-chemicals-in-annies-organic-cheesy-ravioli-and-its-other-food-products/ (last accessed March 20, 2024).

[31] https://www.annies.com/products/organic-cheesy-ravioli-in-tomato-cheese-sauce (last accessed July 25, 2024).

PhilAgain

Upstate New York

Review 1

Votes 8

Children in Household: 3

Age 35+

**Annie's isn't the healthy and safe option anymore**

5 months ago

I checked here to see if Annie's is responding appropriately to the phthalate (plastic) in their food. I am disappointed though. Just generic responses like "we are concerned and want to be part of the solution" Blech! Just automated words. Act on your reputation of having the "healthier" version: pull the ravioli from the shelf, apologize to your customer base that pics you because you claim to be the healthier, cleaner brand, and then make a new product. Dont patronize us with cagey answers that youre looking into it. We are not happy that our formerly healthy brand has 75% more plastic then others in the study. Soooo disappointing. Now watch for the canned response here ----->

**Product Likes:** Quality ingredients

**I consume this product:** Once a week

Helpful? (8) (0) Report

Response from Annie's: 5 months ago

Annies

Food integrity and consumer trust are at the core of Annie's values. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements. Please be assured, that we are committed to learning more to better understand this emerging issue and determine how Annie's can be a part of the solution.

HealthfindHer

Review 1

Votes 7

Age 35+

**High levels of phthalates in product**

6 months ago

Very concerned with the extremely high levels of phthalates in this product.

Helpful? (7) (1) Report

Response from Annie's: 5 months ago

Annies

Food safety is our top priority at Annies. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements.

Plastic for shame!

Review 1

Votes 4

Age 26-34

★☆☆☆☆

**More plastic than anything else**

6 months ago

This is poison! The chemicals used in your packaging is literally poisoning people. Shame!

Helpful? (4) (0) Report

Response from Annie's: 5 months ago

Annies

Food safety is our top priority at Annies. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements.

ClassActionLawsuitPls

Hawaii

Review 1

Votes 4

Age 26-34

★☆☆☆☆

**MADE WITH TOXIC PHTHALATES!**

6 months ago

Please read CONSUMER REPORTS finding on Annie's Organic Cheesy Raviolis " "In the latest report, Consumer Reports measured the amount of phthalates - a group of chemicals used to make plastics more durable - in products in nanograms, which indicates a mass equal to one billionth of a gram. The product with the highest amount of phthalates per serving in nanograms was Annie's canned organic cheesy ravioli, which contained 53,580 nanograms of phthalates per serving. " SHAME ON THIS COMPANY FOR POSING AS HEALTHY "MADE WITH GOODNESS" AND POISONING OUR CHILDREN!

Helpful? (4) (0) Report

Response from Annie's: 5 months ago

Annies

Food integrity and consumer trust are at the core of Annie's values. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements. Please be assured, that we are committed to learning more to better understand this emerging issue and determine how Annie's can be a part of the solution.

33. Public reports and articles, including Defendants' own website, reveal that Defendants' Products contain phthalates. Despite this known risk, Defendants did not disclose anywhere on the Products' labels or packaging that the Products contain phthalates. Nor did Defendants inform consumers of the risk associated with consuming phthalates.

34. While Defendants' packaging does not contain any information about the risk of phthalates, it does find ample space to state that their products are either Certified Organic or Made-with-Organic ingredients. Defendants further tout their Products on the packaging as "Homegrown." The phrase "Made with Goodness!" is prominently featured in a green box that lists under it, "No Artificial Flavors or Synthetic Colors" and some of the packaging also states in the "Made with Goodness" box that there are No Preservatives. The Products also state in that same box on the packaging that they are "Made with Goodness" because they contain "Cheese from Cows Not Treated with rBST," or "Organic cheese from cows raised without antibiotics or synthetic hormones." Moreover, the packaging for many of the Annie's mac & cheese Products contain the words "Made with Real Cheese" or "Real Cheese." The foregoing claims about the cheese are also misleading because, far from being a healthy aspect of the Products as portrayed by Defendants, the packet of dried cheddar cheese is introducing dangerous phthalates into the Products. Defendants also use a cute bunny as a "mascot," which appears on the Products, along with a "Bunny of Approval" or "Rabbit of Approval." This is especially troubling in light of Defendants' marketing towards children.

35. These representations and pictures are done to send the message to parents, caregivers, and their children (as well as all consumers) that Defendants' Products are healthy and wholesome, leading consumers to believe the Products are a safe food.

36. However, contrary to these representations and pictures, the Products contain dangerous and harmful phthalates. As one Annie's consumer stated on Annie's website, as noted above, "Shame on this company for posing as healthy 'made with goodness' and poisoning our children!"[32]

[32] *Id.*

37. Despite knowing their Products contain dangerous and harmful phthalates, Defendants do not provide any information whatsoever on the Product label to inform the consumers of this. Rather, after knowing of this significant hazard, it was not until years later that Defendants began to bury this significant information on the FAQ section of their website, which was not easy to find by parents, caregivers, or consumers. Notably, this information was not listed on the Product page itself, nor was there any disclosure or denotation on the packaging or labels to check the FAQ section of Defendants' website. Today, this information has been removed from Defendants' website completely.

38. As of August 2021, if someone did somehow know to check that FAQ section of Defendants' website, they would find the following:

> **Does Annie's mac and cheese contain phthalates?**
>
> Food integrity and consumer trust are our top priorities at Annie's. We are troubled by the recent report of phthalates found in dairy ingredients of macaroni and cheese and take this issue seriously. While the FDA has not yet adopted a threshold for levels of phthalates in food, the European Food Safety Authority (EFSA) has published risk assessment data which notes a Total Daily Intake of 0.05 mg/kg of body weight. Our mac and cheese products have been tested and we know any trace of phthalates are below the EFSA standard. We are also reviewing available scientific research on the issue to ensure we are informed about the most current evidence related to phthalates and food. Phthalates are chemicals that are widely used to make plastics more pliable and can be found in anything from farm equipment to conveyor belts and packaging ink. Their presence in the supply chain is a widespread and complex issue that affects products well beyond the food industry. Annie's remains committed to sourcing high-quality organic ingredients and ensuring our food is handled in the safest way possible. We continue to work with our trusted suppliers to eliminate ortho-phthalates that may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder in our macaroni and cheese. We are also working closely with our industry partners including the Organic Trade Association and The Organic

> Center to better understand this emerging issue and determine how Annie's can be part of the solution."[33]

39. Upon information and belief, the "recent report" mentioned above refers to the Study reported by the Coalition.

40. While the Study didn't name specific brands tested, as noted above, Defendants admitted that "its mac and cheese products have been tested" and they do contain phthalates.[34] Further, Defendants' website at that time acknowledged the problem: "[w]e continue to work with our trusted suppliers to eliminate ortho-phthalates that may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder in our macaroni and cheese."[35]

41. Defendants are well aware that consumers, including their customers, consider the presence of phthalates in the Products to be important information they would want to know.

42. As noted above, in the prior version of the "Frequently Asked Questions" section of the annies.com website, the very first question, under the heading "Recent Questions," stated, "Does Annie's mac and cheese contain phthalates?"[36] In their response, Defendants stated on their webpage that Annie's Homegrown's "mac and cheese products have been tested" and admits that there were phthalates (or the risk of phthalates) in the Products.[37]

43. As noted above, on their website, Defendants specifically acknowledged that the presence or risk of phthalates is an important issue regarding food safety that their customers would consider important: "Food integrity and consumer trust are our top priorities at Annie's. We are troubled by the recent report of phthalates found in dairy ingredients of macaroni and cheese and

---

[33] https://www.annies.com/faq/ (last accessed August 11, 2021).
[34] *Id.*
[35] *Id.*
[36] https://www.annies.com/faq/ (last accessed August 15, 2021).
[37] *Id.*

take this issue seriously."[38] Defendants' website also acknowledged that phthalates are found in many foods and other consumer products, making them a "widespread and complex issue," and stated "[w]e continue to work with our trusted suppliers to eliminate ortho-phthalates that may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder in our macaroni and cheese."[39] Defendants' statements on their website regarding the presence or risk of phthalates in the Products and their safety demonstrate that Defendants knew this information is material to a reasonable consumer.

44. Defendants, however, still chose to omit any information about the presence (or risk) of phthalates in the Products on the Products' packaging.

45. Now, further recognizing the serious problem with its Products, these above mentions of phthalates have been removed from Defendants' website entirely.

46. A recent consumer survey confirms that consumers of the Products consider it important to know if there are phthalates (or the risk of phthalates) in the Products even in small amounts.

47. In July 2024, Plaintiffs' counsel conducted a consumer survey (the "Consumer Survey") of 401 adults over the age of 18 who had purchased at least one of the Products within the preceding twelve months, 98 of whom live in New York and 303 of whom live in other states across the country. Each respondent viewed one package out of five examples of the Products (those pictured in paragraph 12, *supra*) and was asked several questions after reading the following statement: "Ortho-phthalates, commonly referred to as phthalates (pronounced THAL-eights), are a group of chemicals that are used to make plastics flexible. The chemicals get into food mainly through packaging and food handling equipment that come in contact with food. Scientific

[38] *Id.*
[39] *Id.*

evidence has linked phthalates to certain reproductive, developmental and endocrine-related health problems."

48. The respondents in the Consumer Survey were asked "how important, if at all, would it be to your purchasing decision if the product above contained, or risked containing, even a small amount of the chemicals known as ortho-phthalates?" As between the choices (Important; Very important; Not at all important), 381 out of 401 (95%) answered that the presence or risk of even a small amount of phthalates would be either important or very important to their purchasing decisions; only 20 out of 401 (5%) answered "Not at all important."

49. The respondents in the Consumer Survey were also asked:

"With regards to this specific packaging, taking into account the whole label that you see in the picture, does the label indicate the food… (Select all that apply)

… is healthy

… is sugar free

… is fresh

… is a non-genetically modified organism (non-GMO) product

… is made with safe ingredients

… contains the chemicals known as ortho-phthalates

… other (please specify)"

The results show that 270 out of 401 respondents (67.3%) answered "is healthy" and 299 out of 401 respondents (74.6%) answered "is made with safe ingredients"; only 51 out of 401 respondents (12.7%) selected "contains the chemicals known as ortho-phthalates."

50. The respondents in the Consumer Survey were further asked, "Do you expect a company to test for chemicals known as ortho-phthalates?" The results show that 346 out of 401 respondents (86.3%) answered "Yes" while only 55 out of 401 (13.7%) answered "No." Another question asked, "In your opinion, should a company disclose to consumers testing results for the

chemicals known as ortho-phthalates?" and 390 out of 401 respondents (97.3%) answered "Yes" while only 11 out of 401 (2.7%) answered "No."

51. These results in Plaintiffs' Consumer Survey confirm that: (1) a vast majority of respondents answered it would be important or very important to their purchasing decisions when buying the Products if they contained, or risked containing, even a small amount of phthalates; (2) more than two-thirds answered that the packaging indicated the food was healthy and nearly 75% answered that the packaging indicated the food had safe ingredients, and a vast majority did not believe the packaging indicated the food contained phthalates; (3) a vast majority of respondents expect a company to test for phthalates; and (4) a vast majority of respondents believe that a company should disclose testing results for phthalates.

52. Defendants' omission regarding phthalates prevents consumers from obtaining full and complete information regarding the total amount of phthalates they are ingesting or otherwise being exposed to in a single day and over the course of time. This inhibits consumers' decision-making regarding their cumulative exposure to phthalates.

53. As Defendants' website previously stated, the "presence of phthalates in the supply chain is a widespread [] issue,"[40] which highlights why the presence (or risk) of phthalates in any one given product is a critical piece of information that consumers need to know when making a decision to purchase a food product.

54. Plaintiffs' counsel's independent testing in July 2024 also confirmed the presence of phthalates in the Products. Independent testing was conducted on the only Products still in the possession of Plaintiffs, namely those that Plaintiff Stuve purchased prior to the original filing date of this lawsuit (Organic Shells & Real Aged Cheddar Mac & Cheese; Organic Shells & White

---

[40] *Id.*

Cheddar Mac & Cheese; and Organic Classic Cheddar Mac & Cheese). That testing, performed by specific methods to determine phthalates in food products by an FDA recognized testing laboratory with almost 40 years of testing experience on food, cosmetics and pharmaceutical products, confirmed the presence of phthalates in the Products at not insignificant levels. Specifically, the testing on the three varieties above revealed various phthalates in each box, up to approximately 1,668 ppb for a single phthalate, approximately 143 ppb for a single phthalate, and approximately 224 ppb for a single phthalate for each of the three varieties, respectively. In addition, independent testing was also conducted by the same lab on canned Organic Cheesy Ravioli purchased by Plaintiffs' counsel in July 2024, which also confirmed the presence of phthalates at not insignificant levels. Specifically, the testing on the ravioli revealed various phthalates up to approximately 359 ppb for a single phthalate.

55. Defendants also fail to mention that in the past few years researchers have linked phthalates to asthma, attention-deficit hyperactivity disorder, breast cancer, obesity, type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development and male fertility issues.[41] Nor did Defendants mention that pregnant women and children are the most vulnerable to the adverse health risks, affects, and consequences of consuming Products with phthalates in them.

56. Defendants have acknowledged that the FDA has not set acceptable levels for phthalates in food but downplay the risk of phthalates in its Products by emphasizing that they "are below the EFSA [European Food Safety Authority] standard." However, as the Coalition pointed out in its response to Kraft, the EFSA standard is for **total daily intake** from all sources combined and not from any single source.

[41] https://www.theguardian.com/lifeandstyle/2015/feb/10/phthalates-plastics-chemicals-research-analysis (last accessed March 20, 2024).

57. Despite the irrefutable scientific evidence of the dangers of exposure to phthalates, Defendants' knowledge of the presence (or risk) of phthalates in the Products and that the presence (or risk) of phthalates in the Products is material to consumers, Defendants continue to misleadingly label, package and market their Products as healthy and wholesome and as discussed above, fail to disclose on the packaging that the Products contain (or risk containing) dangerous phthalates. Defendants intentionally omitted disclosure on the Products' packaging of these dangerous chemicals to induce and mislead reasonable consumers to purchase the Products.

58. Defendants' concealment was material and intentional because people are concerned with what is in the food that they are putting into their bodies, as well as parents and caregivers being concerned with what they are feeding to the children in their care. Consumers such as Plaintiffs and the Class Members are influenced by the labels and packaging of products, as well as any warnings or disclosures (or lack thereof) on the product packaging and labels they buy. Defendants know that if they had not omitted that the Products contained phthalates and that the Products were not safe or healthy for consumption, then Plaintiffs and the Class would not have paid a premium for the Products (or purchased them at all) and Defendants wanted to increase sales/profits.

## JURISDICTION AND VENUE

59. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiffs are citizens of the State of New York, Defendant General Mills, Inc. is a citizen of Delaware and Minnesota, Defendant Annie's Homegrown is a citizen of California; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

60. This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

61. Venue is proper because Plaintiffs and many Class Members reside in the Eastern District of New York, and throughout the State of New York. A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

### Plaintiffs

62. Plaintiff Shelby Franklin is a citizen and resident of the State of New York. During the applicable statute of limitations period, Plaintiff Franklin purchased several of the Products, including Real Aged Cheddar Mac & Cheese Microwavable Cups, White Cheddar Mac & Cheese Microwavable Cups, Gluten Free Rice Pasta & Cheddar Mac, Organic Alfredo Shells & Cheddar Mac & Cheese, Bunny Pasta with Yummy Cheese Mac & Cheese and Organic Cheesy Ravioli, that contained phthalates. Plaintiff purchased these Products multiple times during the applicable statute of limitations period from retail stores such as Shoprite and CVS in Nassau County, New York. Plaintiff paid up to regular retail price for the Products she purchased. Plaintiff Franklin was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendants' deceptive conduct as alleged herein, Plaintiff Franklin was injured when she paid the purchase price and/or a price premium for the Products. Plaintiff Franklin paid the above sum in reliance that the labelling of the Products was accurate and that there were no material omissions. Plaintiff Franklin would be willing to purchase the Products in the future if she could be certain they do not contain (or have the material risk of containing) phthalates. The Products purchased by Plaintiff are substantially and sufficiently similar to the products within Defendants'

products portfolio that Plaintiff did not purchase (i.e., each of Defendants' Products set forth herein in paragraph 1).

63. Plaintiff Gabrielle Stuve is a citizen and resident of the State of New York, residing in Hauppauge, New York. During the applicable statute of limitations period, Plaintiff Stuve purchased in New York Products that were manufactured and produced by Defendants that contained phthalates, including Organic Shells & Real Aged Cheddar Mac & Cheese; Organic Shells & White Cheddar Mac & Cheese; and Organic Classic Cheddar Mac & Cheese. She paid up to the regular retail price for the Products. Plaintiff Stuve was unaware that the Products contained (or risked containing) phthalates and would not have purchased the Products if that were fully disclosed or she would have paid less than she did. As a result of Defendants' deceptive conduct as alleged herein, Plaintiff Stuve was injured when she paid the purchase price and/or a price premium for the Products. Plaintiff Stuve paid the above sum in reliance that the labelling of the Products was accurate and that there were no material omissions. Plaintiff Stuve would be willing to purchase the Products in the future if she could be certain they do not contain (or have the material risk of containing) phthalates. The Products purchased by Plaintiff are substantially and sufficiently similar to the products within Defendants' products portfolio that Plaintiff did not purchase (i.e., each of Defendants' Products set forth herein in paragraph 1).

64. Had Defendants not made the false, misleading, and deceptive representations and omissions regarding the Products containing phthalates, Plaintiffs would not have been willing to pay the same amount for the Products or would not have been willing to purchase the Products at all. Plaintiffs purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products. The Products Plaintiffs received were worth less than the Products for which they paid. Plaintiffs were injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

65. Defendant General Mills, Inc. is a Delaware corporation with its principal place of business in Golden Valley, Minnesota.

66. Defendant Annie's Homegrown is a wholly-owned subsidiary of Defendant General Mills. Annie's Homegrown's principal place of business is located at 1610 Fifth Street, Berkeley, California 94710, and its Customer Relations Department is located there. Defendant Annie's Homegrown is a citizen of the State of California

67. Defendants manufacture, market, advertise, and distribute the Products throughout the United States, including New York.

## CLASS ALLEGATIONS

68. Plaintiffs bring this matter on behalf of themselves and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

69. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

70. Plaintiffs also seek certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

71. The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

72. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

73. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

74. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendants' false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

75. Typicality: Plaintiffs are members of the Class. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

76. Adequacy: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, and they have a strong interest in vindicating their rights. Plaintiffs have also retained counsel competent that is experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

77. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

78. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising and omissions to purchase their Products.

79. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) and/or Rule 23(c)(4) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiffs and New York Subclass Members)**

80. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

82. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

83. There is no adequate remedy at law.

84. Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

85. Defendants' improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiffs and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

86. Plaintiffs and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were mislabeled and not healthy and nutritious. Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

87. Defendants' advertising and Products' packaging and labeling induced Plaintiffs and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

88. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiffs and the New York Subclass Members have been damaged thereby.

89. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass Members are entitled to monetary, statutory, compensatory,

treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiffs and the New York Subclass Members)**

90. Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

91. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

92. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

93. Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning Defendants' Products inasmuch as they misrepresent that the Products are healthy and don't list or disclose that the Products contain, or risk containing, phthalates.

94. Plaintiffs and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and paid a premium for the Products which were mislabeled and not healthy and nutritious. Accordingly, Plaintiffs and the New York Subclass Members received less than what they bargained and/or paid for.

95. Defendants' advertising, packaging, and products' labeling induced Plaintiffs and the New York Subclass Members to buy Defendants' Products.

96. Defendants made their untrue and/or misleading statements and representations and omissions willfully, wantonly, and with reckless disregard for the truth.

97. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

98. Defendants made the material misrepresentations and omissions described in this Complaint in Defendants' advertising and on the Products' packaging and labeling.

99. Defendants' material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations and omissions.

100. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiffs and New York Subclass Members are entitled to monetary, statutory, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
## NEGLIGENCE *PER SE*
**(On Behalf of Plaintiffs and the New York Subclass Members)**

101. Plaintiffs repeat and re-allege each and every allegation contained in all the foregoing paragraphs as if set fully set forth herein.

102. Violation of a statute constitutes per se negligence where it can be shown that Plaintiffs belong to the class of legislatively intended beneficiaries and that a right of action would be clearly in furtherance of the legislative purpose.

103. Defendants are liable for negligence per se due to their violations of the Food Drug and Cosmetics Act (21 U.S.C. §§ 342, 343), as described herein. The Products are "adulterated" because they contain phthalates which are undisputedly deleterious substances.

104. Pursuant to 21 U.S.C. § 342, food is considered "adulterated" if it "contains any poisonous or deleterious substance which may render it injurious to health."

105. Pursuant to 21 U.S.C. § 343, food is deemed "misbranded" if its "labeling is false or misleading in any particular." The Products are "misbranded" because (a) their labeling contains the affirmative misrepresentations detailed herein indicating that the Products are wholesome, healthy and safe to consume, when they actually contain dangerous phthalates; and (b) their labeling fails to identify the fact that they contain or risk containing phthalates.

106. Section 199-a of the New York Agriculture and Markets Law ("N.Y. Agric. & Mkts. Law") prohibits persons and corporations from manufacturing or selling in this state "any article of food which is adulterated or misbranded within the meaning of this statute."

107. Food is considered adulterated if it "contains any poisonous or deleterious substance which may render it injurious to health." N.Y. Agric. & Mkts. Law § 200(1).

108. Food is considered misbranded if its "labeling is false or misleading in any particular." N.Y. Agric. & Mkts. Law § 201(1).

109. Defendants violate Section 199-a insofar as they manufacture and sell the Products, which are both adulterated and misbranded.

110. The Products are "adulterated" in violation of N.Y. Agric. & Mkts. Law § 200(1) because they contain phthalates which are undisputedly deleterious substances.

111. The Products are "misbranded" in violation of N.Y. Agric. & Mkts. Law § 201(1) because (a) their labeling contains the affirmative misrepresentations detailed herein indicating that the Products are wholesome and healthy to consume, when they actually contain dangerous

phthalates; and (b) their labeling fails to identify the fact that they contain or risk containing phthalates.

112. Both the N.Y. Agric. & Mkts. Law and the FDCA are designed to protect consumers like Plaintiffs from products which are adulterated with dangerous substances and/or labeled in a deceptive manner. Accordingly, Defendants' violations of these statutes subject them to liability for negligence per se under New York law.

## FOURTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiffs and All Class Members)**

113. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114. Defendants provided Plaintiffs and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are healthy and nutritious for consumption.

115. The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

116. These affirmations of fact became part of the basis for the bargain and were material to Plaintiffs' and Class Members' transactions.

117. Plaintiffs and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

118. Defendants knowingly breached the express warranties by including phthalates in the Products sold to Plaintiffs and the Class.

119. Within a reasonable time after they knew or should have known, Defendants did not change the Products' labels to place any warning that phthalates were or risked being in the Products.

120. In fact, Defendants did nothing to conspicuously alert consumers regarding the dangers it was well aware of regarding the dangers of phthalates.

121. Further, within a reasonable time after they knew or should have known of Defendants' breach, Plaintiffs, on behalf of themselves and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure their breach, which they failed to do.

122. Plaintiff Stuve provided Defendants notice of the breach by letter dated March 10, 2021.

123. Defendants breached the following state warranty laws:

a. Code of Ala. § 7-2-313;

b. Alaska Stat. § 45.02.313;

c. A.R.S. § 47-2313;

d. A.C.A. § 4-2-313;

e. Cal. Comm. Code § 2313;

f. Colo. Rev. Stat. § 4-2-313;

g. Conn. Gen. Stat. § 42a-2-313;

h. 6 Del. C. § 2-313;

i. D.C. Code § 28:2-313;

j. Fla. Stat. § 672.313;

k. O.C.G.A. § 11-2-313;

l. H.R.S. § 490:2-313;

m. Idaho Code § 28-2-313;

n. 810 I.L.C.S. 5/2-313;

o. Ind. Code § 26-1-2-313;

p. Iowa Code § 554.2313;

q. K.S.A. § 84-2-313;

r. K.R.S. § 355.2-313;

s. 11 M.R.S. § 2-313;

t. Md. Commercial Law Code Ann. § 2-313;

u. 106 Mass. Gen. Laws Ann. § 2-313;

v. M.C.L.S. § 440.2313;

w. Minn. Stat. § 336.2-313;

x. Miss. Code Ann. § 75-2-313;

y. R.S. Mo. § 400.2-313;

z. Mont. Code Anno. § 30-2-313;

aa. Neb. Rev. Stat. § 2-313;

bb. Nev. Rev. Stat. Ann. § 104.2313;

cc. R.S.A. 382-A:2-313;

dd. N.J. Stat. Ann. § 12A:2-313;

ee. N.M. Stat. Ann. § 55-2-313;

ff. N.Y. U.C.C. Law § 2-313;

gg. N.C. Gen. Stat. § 25-2-313;

hh. N.D. Cent. Code § 41-02-30;

ii. II. O.R.C. Ann. § 1302.26;

jj. 12A Okl. St. § 2-313;

kk. Or. Rev. Stat. § 72-3130;

ll. 13 Pa. Rev. Stat. § 72-3130;

mm. R.I. Gen. Laws § 6A-2-313;

nn. S.C. Code Ann. § 36-2-313;

oo. S.D. Codified Laws, § 57A-2-313;

pp. Tenn. Code Ann. § 47-2-313;

qq. Tex. Bus. & Com. Code § 2.313;

rr. Utah Code Ann. § 70A-2-313;

ss. 9A V.S.A. § 2-313;

tt. Va. Code Ann. § 59.1-504.2;

uu. Wash. Rev. Code Ann. § 6A.2-313;

vv. W. Va. Code § 46-2-313;

ww. Wis. Stat. § 402.313;

xx. Wyo. Stat. § 34.1-2-313.

124. As a direct and proximate result of Defendants' breach of the express warranty, Plaintiffs and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and All Class Members in the Alternative)**

125. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

126. Plaintiffs, on behalf of themselves and consumers nationwide, bring a claim for unjust enrichment.

127. Defendants' conduct violated, *inter alia*, state law by manufacturing, advertising,

marketing, and selling their Products while misrepresenting and omitting material facts.

128. Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiffs and Class Members and to Defendants' benefit and enrichment. Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

129. Plaintiffs and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

130. Accordingly, it is inequitable for Defendants to retain the benefits conferred by Plaintiffs and Class Members' overpayments.

131. Plaintiffs and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the FRCP;

(b) Awarding statutory damages, as applicable, of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(c) Awarding statutory damages, as applicable, of $500 per transaction pursuant to N.Y. GBL

§ 350;

(d) Awarding any other damages as applicable under the law;

(e) Awarding punitive damages;

(f) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses;

(g) Granting such other and further relief as the Court may deem just and proper; and

(h) damages and treble damages.

Dated: July 31, 2024

**SULTZER & LIPARI, PLLC**

By:

_/s/*Philip J. Furia*_______
Jason P. Sultzer, Esq.
Philip J. Furia, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
furiap@thesultzerlawgroup.com

**LEVIN SEDRAN & BERMAN LLP**
Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106-3697
Tel: (215) 592-1500
Fax: (215) 592-4663
CSchaffer@lfsblaw.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Alec M. Leslie
1330 Avenue of the Americas
New York, New York 10019
Tel: (646) 837-7150
Fax: (212) 989-9163

jarisohn@bursor.com
aleslie@bursor.com

**GEORGE FELDMAN MCDONALD, PLLC**
Lori G. Feldman
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4529
LFeldman@4-justice.com
EService@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
Janine L. Pollack
745 Fifth Avenue, Suite 500
New York, New York 10151
Phone: (917) 983-2707
Fax: (888) 421-4529
JPollack@4-justice.com
EService@4-justice.com

**GEORGE FELDMAN MCDONALD, PLLC**
David J. George
Brittany Sackrin
9897 Lake Worth Road, Suite 302
Lake Worth, Florida 33467
Tel: (561) 232-6002
Fax: (888) 421-4529
DGeorge@4-justice.com
BSackrin@4-justice.com
EService@4-justice.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Rebecca A. Peterson
100 Washington Avenue South
Suite 2200
Minneapolis, Minnesota 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
Rapeterson@locklaw.com

*Counsel for Plaintiffs and the Class*