UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>For Online Publication Only</u>

-----------------------------------------------------------------------X
Shelby Franklin and Gabrielle Stuve,
individually and on behalf of all other
similarly situated,

                        Plaintiffs,

            -against-

General Mills, Inc. and Annie's Homegrown,

                       Defendants.
-----------------------------------------------------------------------X

**<u>MEMORANDUM & ORDER</u>**
21-cv-01781 (JMA) (AYS)

**FILED**
**CLERK**

3:12 pm, Sep 10, 2025

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

    Plaintiffs Shelby Franklin and Gabrielle Stuve filed the instant action alleging that Defendants General Mills, Inc. and Annie's Homegrown (collectively, "Defendants") deceptively marketed and labeled their Annie's brand of macaroni and cheese products sold with cheese packets and the canned Organic Cheesy Ravioli (the "Products"). (<u>See</u> ECF No. 64, Plaintiffs' Third Amended Class Action Complaint, hereinafter ("TAC") ¶¶ 1, 12, 65–67.) Plaintiffs allege that Defendants' packaging and marketing are deceptive because they fail to disclose the presence of "ortho-phthalates," also known as "phthalates," in the Products. (<u>Id.</u> ¶¶ 1-2.) According to Plaintiffs, exposure to phthalates, even at low levels, is linked to multiple adverse health effects, including asthma, attention-deficit hyperactivity disorder, breast cancer, obesity, type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development, and male fertility issues. (<u>Id.</u> ¶¶ 3-4, 20-23, 55.) Plaintiffs allege that Defendants failed to disclose the presence of phthalates in their products and instead conveyed the message that the Products are free of harmful, artificial chemicals and healthy to eat. Based on these allegations, Plaintiffs assert five claims: violations of New York General Business Law § 349 and § 350; negligence <u>per se</u>; breach of express warranty; and unjust enrichment. (<u>Id.</u> ¶¶ 80–131.)

Plaintiffs seek to represent a nationwide class or, alternatively, a subclass of New York purchasers. (Id. ¶¶ 69–70.)  Defendants have moved to dismiss each of Plaintiffs' claims.  For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part.

## I.    BACKGROUND[1]

Plaintiffs allege that Defendants have deceptively labeled and marketed their products[2] to reasonable consumers by branding them as healthy and wholesome while omitting the fact that the Products contain (or risk containing) "ortho-phthalates," also known as "phthalates."  (TAC ¶¶ 2, 9-12, 34-35.)    Phthalates are endocrine disrupting chemicals that have been associated with adverse health effects, particularly in relation to early life exposures.  (Id. ¶ 3, 20-24.)  Plaintiffs allege that phthalates "have been shown to leach into food from plastic equipment used in food processing and preparation as well as in food packaging materials."  (Id. ¶ 25.)  In the past few years, researchers have linked phthalates to asthma, attention-deficit hyperactivity disorder, breast cancer, obesity and type II diabetes, low IQ, neurodevelopmental issues, behavioral issues, autism spectrum disorders, altered reproductive development and male fertility issues.  (Id. ¶ 4.)  According to Plaintiffs' Complaint, recent studies have linked prenatal exposure to phthalates with neurodevelopment deficiencies in children, including ADHD, deficits in executive function, problems with conduct and aggression, depression, deficits in child IQ, and other adverse impacts on cognitive and psychomotor development.  (Id. ¶ 20.)

---

[1] The facts set forth in this Opinion are drawn from Plaintiffs' TAC and the parties' submissions in connection with Defendants' motion to dismiss.  For ease of reference, the Court refers to Defendants' motion to dismiss as "Defs.' Br." (ECF No. 70), Plaintiffs' opposition brief as "Pls.' Opp." (ECF No. 73), and Defendants' reply brief as Defs.' Repl." (EF No. 74).  The Court also grants Defendants' request for the Court to take judicial notice of representative labels of Annie's Homegrown macaroni and cheese and cheesy ravioli, two of the Products at issue in this Action, which are attached as exhibits A and B to Defendants' Affidavit in Support of their Motion to Dismiss at ECF No. 71.

[2] Plaintiffs identify a list of Defendants' macaroni and cheese products sold with cheese packets (excluding vegan varieties) as well as canned Organic Cheesy Ravioli products that are the subject of the instant lawsuit.  (TAC ¶ 1.)

Defendants state on their Products' packaging that the Products are either "Certified Organic" or made with "Organic Ingredients." (TAC ¶ 10.)  Defendants further advertise their Products on the packaging as "Homegrown," and the phrase "Made with Goodness!" is prominently featured in a green text box that lists under it, "No Artificial Flavors or Synthetic Colors."  (Id.)  Some of the packaging also states in the "Made with Goodness" box that there are "No Preservatives."  (Id.)  The Products also state on that same box that they are "Made with Goodness" and contain "Cheese from Cows Not Treated with rBST," or "Organic cheese from cows raised without antibiotics or synthetic hormones."  (Id.)  Moreover, the packaging for many of the Annie's macaroni & cheese Products contains the words "Made with Real Cheese" or "Real Cheese."  (Id.)  Defendants also use a bunny as a "mascot," which appears on the Products, along with a "Bunny of Approval" or "Rabbit of Approval" logo.  (Id.)  Plaintiffs allege that the foregoing claims about Defendants' products are false, deceptive, and misleading because Defendants know the Products contain or risk containing phthalates, but omit any disclosure of this fact and instead present the Products as free of artificial chemicals.  (Id. ¶¶ 13, 36-37, 44.)  Plaintiffs further claim that they reasonably relied on Defendants' misrepresentations and omissions in believing the Products are healthy and wholesome when, in fact, they contain (or risk containing) dangerous phthalates.  (Id. ¶ 14.)  Plaintiffs and those similarly situated ("Class Members") allege that they paid a premium for the Products based upon Defendants' health-conscious marketing and advertising campaigns, including their allegedly false and misleading representations and omissions on the Products' labels.  (Id. ¶ 15.)

In 2017, the Coalition for Safer Food Processing and Packaging (the "Coalition"), a national alliance of non-profit organizations concerned about human health, food safety and social justice, published a study (the "Study") that tested, among other cheese products, cheese powder in ten varieties of macaroni and cheese.  (Id. ¶ 26.)  The Study found that macaroni and cheese

powder had the highest level of phthalates of all of the products tested and that all ten varieties of the macaroni and cheese products tested contained phthalates.  (Id.)  The Study further found that the average phthalate levels in macaroni and cheese powder were more than 4 times higher than in the hard block cheese and other natural cheeses that were tested.  (Id.)  Moreover, Di(2-ethylhexyl)phthalate ("DEHP"), which has been found to be among the most potent phthalate species linked to disruptions in reproductive development, was the most prevalent of all phthalates detected and was present in a much higher concentration than any other phthalate.  (Id. ¶¶ 22, 25, 27.)

Following the Study, the Coalition sent a letter to the Chief Executive Officer of the Kraft Heinz Company ("Kraft"), the leading seller of macaroni and cheese in the U.S., asking him to "eliminate toxic industrial chemicals known as *ortho*-phthalates from your food products."  (Id. ¶ 28.)  The letter also enumerated health concerns associated with phthalates.  (Id.)  In a July 20, 2017, statement, the Coalition acknowledged that Kraft responded to its letter, but stated:

> [t]his serious public health risk stems from daily exposure to phthalates from all sources combined. This is what's known as an unacceptable 'cumulative risk.' Kraft asserts that the amount of phthalates in the products we tested is many times 'lower than levels that scientific authorities have identified as acceptable.' What Kraft didn't say is that the only acceptable levels that exist apply to the total daily intake of phthalates from all sources combined, not from any single product. With phthalates found in some dairy products, baked goods, oils, infant formula, fast food, consumer products, house dust – together, these daily exposures add up to too much.

(Id. ¶ 29.)

Essentially, the Coalition asserted—and Plaintiffs allege in their complaint—that because the effect of phthalates is cumulative, even if the amount of phthalates in a product is small in absolute terms, the amount is significant relative to other sources of phthalate exposure.  (Id. ¶¶ 29, 52.)  Plaintiffs allege that despite knowing their Products contain dangerous

and harmful phthalates, Defendants do not provide any information whatsoever on the Product label to inform consumers. (Id. ¶ 37.) Instead, as of August 2021, years after Defendant allegedly knew of this hazard, Defendants allegedly began to "bury" this information on the FAQ section of their website. (Id.) This information is now removed from the Defendants' website, but as of August 2021, the FAQ section read:

**Does Annie's mac and cheese contain phthalates?**

> Food integrity and consumer trust are our top priorities at Annie's. We are troubled by the recent report of phthalates found in dairy ingredients of macaroni and cheese and take this issue seriously. While the FDA has not yet adopted a threshold for levels of phthalates in food, the European Food Safety Authority (EFSA) has published risk assessment data which notes a Total Daily Intake of 0.05 mg/kg of body weight. Our mac and cheese products have been tested and we know any trace of phthalates are below the EFSA standard. We are also reviewing available scientific research on the issue to ensure we are informed about the most current evidence related to phthalates and food. Phthalates are chemicals that are widely used to make plastics more pliable and can be found in anything from farm equipment to conveyor belts and packaging ink. Their presence in the supply chain is a widespread and complex issue that affects products well beyond the food industry. Annie's remains committed to sourcing high-quality organic ingredients and ensuring our food is handled in the safest way possible. We continue to work with our trusted suppliers to eliminate ortho-phthalates that may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder in our macaroni and cheese. We are also working closely with our industry partners including the Organic Trade Association and The Organic Center to better understand this emerging issue and determine how Annie's can be part of the solution.

(Id. ¶ 38.) Plaintiffs allege that the "recent report" mentioned above refers to the Study reported by the Coalition. (Id. ¶ 39.) While the Study didn't name the specific brands tested, Plaintiffs allege that Defendants are aware that consumers consider the presence of phthalates in the Products to be important information they would want to know, as demonstrated by the information included in the prior version of the FAQ section. (Id. ¶ 40-42.) Plaintiffs allege that despite being aware of this information and including it at one time on the FAQ section of their website, Defendants still chose to omit any information about the presence (or risk) of phthalates in the Products on the Products' packaging itself. (Id. ¶ 44.)

5

On January 4, 2024, Consumer Reports[3] published the findings of its investigation into the presence of dangerous substances such as phthalates in popular foods available in supermarkets. (Id. ¶ 30.) It found that one of the highest levels of phthalates existed in Defendants' canned Annie's Organic Cheesy Ravioli product, which contained 53,579 nanograms of phthalates per serving. (Id.) Following the release of its report, on February 7, 2024, Consumer Reports sent a letter to Defendant General Mills, calling on it to reduce concerning levels of phthalates in its products. (Id. ¶ 31.) Thereafter, customers posted reviews on Defendants' website expressing concern with the investigation's finding of the presence of phthalates in Defendants' products. (Id. ¶ 32.) Defendant Annie's Homegrown posted several responses to these reviews on their website that recognized the investigation's findings, including one that reads as follows:

> Food integrity and consumer trust are at the core of Annie's values. We review the ingredients and packaging we buy and the companies that supply them on a regular cadence. The products tested by Consumer Reports were within regulatory requirements. Please be assured, that we are committed to learning more to better understand this emerging issue and determine how Annie's can be a part of the solution.

(Id.)

In July 2024, Plaintiffs' counsel conducted a consumer survey (the "Consumer Survey") of 401 adults over the age of 18 who had purchased at least one of the Products within the preceding twelve months, 98 of whom live in New York and 303 of whom live in other states across the country. (Id. ¶ 47.) After reviewing one package out of five examples of the Products and reading a statement concerning phthalates and the potential health risks associated with them, the respondents were asked: "how important, if at all, would it be to your purchasing decision if the product above contained, or risked containing, even a small amount of the chemicals known as

---

[3] Consumer Reports is an American nonprofit consumer organization dedicated to independent product testing, investigative journalism, consumer-oriented research, public education, and consumer advocacy. See https://www.consumerreports.org/about-us/what-we-do/.

ortho-phthalates?" (Id. ¶ 48.)  381 out of 401 (95%) answered that the presence or risk of even a small amount of phthalates would be either important or very important to their purchasing decisions.  (Id.)  270 out of 401 respondents also answered that the specific packaging they reviewed indicated that the food "is healthy," and 299 out of 401 respondents answered that the packaging indicated that the food "is made with safe ingredients." (Id. ¶ 49.)  When further asked if they "expect a company to test for chemicals known as ortho-phthalates," 346 out of 401 respondents (86.3%) answered "Yes."  (Id. ¶ 50.)  Finally, Respondents were asked: "In your opinion, should a company disclose to consumers testing results for the chemicals known as ortho-phthalates?" (Id.)  390 out of 401 respondents (97.3%) answered "Yes" to this question.  (Id.)

Plaintiffs' counsel's independent testing in July 2024 also confirmed the presence of phthalates in the Products.  (Id. ¶ 54.)  Independent testing was conducted on the only Products still in the possession of Plaintiffs, namely those that Plaintiff Stuve purchased prior to the original filing date of this lawsuit (Organic Shells & Real Aged Cheddar Mac & Cheese; Organic Shells & White Cheddar Mac & Cheese; and Organic Classic Cheddar Mac & Cheese).  (Id.)  That testing confirmed the presence of phthalates in the Products at what Plaintiffs allege are "not insignificant" levels.  (Id.)  Specifically, the testing on the three varieties above revealed various phthalates in each box, up to approximately 1,668 parts per billion ("ppb") for a single phthalate, approximately 143 ppb for a single phthalate, and approximately 224 ppb for a single phthalate for each of the three varieties, respectively.  (Id.)  In addition, independent testing was also conducted by the same lab on canned Organic Cheesy Ravioli purchased by Plaintiffs' counsel in July 2024, which also confirmed the presence of phthalates in the Products.  (Id.)  Specifically, the testing on the ravioli revealed various phthalates up to approximately 359 ppb for a single phthalate.  (Id.)

For its part, the FDA has not set a specific threshold for the level of phthalates allowed in food products.  (Id. ¶ 56.)  The FDA has, however, promulgated regulations and issued findings

about the safety of phthalates in other contexts.  For example, the FDA permits the use of phthalates in food contact applications, such as processing tools and packaging materials.  (<u>See</u> Defs.' Br. at 5 (citing 21 C.F.R. § 178.3740).)

Plaintiffs originally filed this suit on April 1, 2021, and then filed an amended complaint on August 18, 2021.  (<u>See</u> ECF Nos. 1, 22.)  On February 15, 2022, Defendants filed a motion to dismiss, which the Court denied without prejudice, asking the parties to submit letters concerning the potential impact on this case of the FDA's comment period regarding the use of phthalates for food contact applications.  (<u>See</u> ECF No. 34; Elec. Order dated Sept. 30, 2022.)  On February 12, 2024, the Court determined that a primary jurisdiction stay was not warranted.  (Elec. Order dated Feb. 12, 2024.)  Plaintiff then filed a second amended complaint on March 22, 2024 and a third amended complaint (the "TAC") on July 31, 2024.  (<u>See</u> ECF Nos. 59, 64.)  Plaintiffs bring claims on behalf of themselves and Class Members similarly situated and assert five claims: violations of New York General Business Law § 349 and § 350; negligence <u>per se</u>; breach of express warranty; and unjust enrichment.  (<u>Id.</u> ¶¶ 80–131.)  On December 10, 2024, Defendants moved to dismiss Plaintiffs' lawsuit for failure to state a claim.  (ECF Nos. 69-70.)

## II.    LEGAL STANDARDS

### A.    <u>Article III Standing</u>

To establish Article III standing, Plaintiffs bear the burden of showing, among other things, that they "suffered an injury in fact that is concrete, particularized, and actual or imminent."  <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 423 (2021).  Plaintiffs must allege "enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief."  <u>Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.</u>, 19 F.4th 58, 65–66 (2d Cir. 2021).

B.    **Failure to State a Claim**

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).  Courts evaluate motions under Rule 12(b)(6) by determining whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  That standard requires the Court to accept as true all well-pled factual allegations in the TAC and consider documents attached to that pleading, materials incorporated by reference in or integral to that pleading, and matters of which the Court may take judicial notice.  See Clark v. Hanley, 89 F.4th 78, 93 (2d Cir. 2023).  The Court need not accept conclusory assertions, legal conclusions, or formulaic recitation of a claim's elements.  See, e.g., In re Facebook, Inc., IPO Derivative Litig., 797 F.3d 148, 159 (2d Cir. 2015).  To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 664; see also id. at 678 (explaining that a complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation").  Determining whether the TAC states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 664.

## III.    DISCUSSION

Defendants lodge four arguments supporting dismissal: (1) Plaintiff Franklin fails to plausibly allege injury-in-fact to establish standing; (2) Plaintiffs' misrepresentation allegations fail because the statements they challenge would not deceive a "reasonable consumer" and are otherwise nonactionable; (3) Plaintiffs' omission-based claims are preempted by federal law and fail under New York law; and (4) Plaintiffs' common law claims necessarily fail alongside their substantive consumer fraud claims.  The Court addresses these issues in turn.

**A.**    **Plaintiff Franklin Satisfies Article III Standing**

While Defendants concede that Plaintiff Stuve has sufficiently alleged an injury in fact to establish Article III standing, they argue that Plaintiff Franklin has not met that burden.  According to Defendants, Plaintiff Franklin lacks standing because she has "not alleged sufficient facts to allow the inference that the [Products] [she] *individually purchased* in fact contained [phthalates], or that there was a material risk that they did."  (Defs.' Br. at 7 (citing Hicks v. L'Oreal U.S.A., Inc., No. 22-CV-3926, 2023 WL 6386847, at *7–8 (S.D.N.Y. Sept. 30, 2023)).)

"[A]t the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'"  John v. Whole Foods Market Group, Inc., 858 F.3d 732, 736 (2d Cir. 2017).  Because Defendants present a facial challenge to standing based solely on the TAC's allegations, Plaintiffs "bear[] no evidentiary burden at the pleading stage."  Id.  The Second Circuit has "repeatedly described th[e injury in fact] requirement as 'a low threshold.'"  Id.  It "consists of 'an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'"  Id.  Paying a price premium is sufficient for economic injury in fact.  See id. (citing Carter v. HealthPort Tech., LLC, 822 F.3d 47, 55 (2d Cir. 2016) ("[e]ven a small financial loss suffices")).  Plaintiff Franklin's allegations that she paid for products she would not have purchased, or for which she would not have paid a premium, absent the deception (see, e.g., TAC ¶¶ 62, 64), satisfy Article III standing under John, 858 F.3d at 736.

In Onaka v. Shiseido Americas Corp., the court noted: "[i]n consumer fraud and related claims cases, a Complaint that alleges facts demonstrating it is at least plausible that a plaintiff purchased a misbranded product sufficiently confers Article III standing."  2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023) (citing John, 858 F.3d 732)). The court identified three examples of ways for a plaintiff to satisfy this plausibility requirement:

> For example, a plaintiff can allege that her purchased products actually were misbranded, *see Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 239 (S.D.N.Y. 2022);

"that a third-party investigation has revealed defects in the same line of such products" as those she purchased, *Clinger v. Edgewell Personal Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 WL 2477499, at *3 (D. Conn. Mar. 13, 2023) (citing *John*, 858 F.3d at 732), or by alleging a 'broad systematic fraud in a market in which [plaintiffs] regularly transact[ ]'. *Wilson v. Mastercard*, 21-CV-5930, 2022 WL 3159305, at *5 (S.D.N.Y. Aug. 8, 2022))."

Id.  In <u>Clinger</u>, the court held that is not necessary for the plaintiff to test the "actual" product she bought.  2023 WL 2477499, at *3.  "Instead, as the Second Circuit has ruled in a somewhat similar context, a product defect may be plausibly inferred from the fact that a third-party investigation has revealed defects in the same line of such products."  <u>Id.</u>  Moreover, "even in the absence of linkage to a particular batch or lot, it is reasonable to assume that the same product line would involve the same manufacturing process and with the same likelihood of residual [ ] contamination even if not every batch is contaminated."  <u>Id.</u> at *4.  Further, "'at the pleading stage,' a plaintiff 'need not prove the accuracy' of an independent investigative study's findings 'or the rigor of its methodology.'"  <u>Id.</u> at *6 (quoting <u>John</u>, 858 F.3d at 737).  The court also held that the plaintiffs "need not show that every one of their purchases" contained the contaminant where they allege that they "would not have paid as much or anything for their [products] had the label warned of the risk of [ ] contamination—a risk that plausibly is alleged to have existed in the first place in light of the independent testing results for specific product lines that [the] plaintiffs purchased."  <u>Id.</u>  Finally, even where "defendants dispute whether the amount of [the contaminant] as reported in the studies was enough to make the products unsafe, it is plausible to conclude that a consumer would not wish to purchase and use a product containing a known carcinogen."  <u>Id.</u>

Moreover, where a defendant acknowledges the presence or risk of the contaminant, plaintiffs may establish standing without actually testing the products that they purchased.  <u>See</u> <u>Winans v. Ornua Foods N. Am. Inc.</u>, 731 F. Supp. 3d 422, 428–29 (E.D.N.Y. 2024).  In <u>Winans</u>, the defendant had recalled certain butter products due to the presence of per- and polyfluoralkyl substances ("PFAS") in the packaging, and the plaintiff alleged that the PFAS had migrated into

the butter, citing studies on migration.  Id.  The defendant argued that the plaintiff did not plausibly allege that any of the butter products contained PFAS, including because she did not provide testing.  Id.  Finding that plaintiff plausibly alleged an injury in fact, the court rejected defendant's argument, stating that the lack of testing results "is of no moment."  Id. at 428 (citing Clinger, 2023 WL 2477499, at *3).  The court stated that while testing "might be sensible in cases where there is no reason to otherwise believe that a product contained PFAS," it was not necessary where the defendant acknowledged presence of the contaminant (a product recall in that case).  Id.

Here, under the foregoing standards, Franklin has sufficiently alleged injury in fact. Franklin purchased the following Products "multiple times" throughout the applicable time period: Real Aged Cheddar Mac & Cheese Microwavable Cups, White Cheddar Mac & Cheese Microwavable Cups, Gluten Free Rice Pasta & Cheddar Mac, Organic Alfredo Shells & Cheddar Mac & Cheese, and Bunny Pasta with Yummy Cheese Mac & Cheese.  (TAC ¶ 62.)  Each of these are "macaroni and cheese products sold with a cheese packet" (the "Cheese Packet Products") and are allegedly substantially similar to the other varieties of Cheese Packet Products listed in the TAC as part of the class of products being challenged by Plaintiffs.  (Id. ¶¶ 1, 62.)  Franklin also purchased the canned Organic Cheesy Ravioli "multiple times" during the relevant time period.  (Id. ¶ 1.)

Given Defendants' admissions of the presence and/or risk of phthalates in the Products on the FAQ section of their website after the 2017 Coalition Study had found that macaroni and cheese powder had the highest level of phthalates of all of the cheese products tested and that all ten varieties of the macaroni and cheese products tested contained phthalates, it is plausible that Plaintiff Franklin purchased Cheese Packet Products that contained phthalates.  Taking Franklin's allegations as true and drawing all reasonable inferences in her favor, as this Court must, see John, 858 F.3d at 737, the Court concludes that Franklin has plausibly alleged that she purchased a

Cheese Packet Product that contained phthalates.  See Winans, 731 F. Supp. 3d at 428 (finding standing where Plaintiff did not test the products bought but cited studies establishing instances of PFAS migrating from packaging to food products and defendant had acknowledged of the presence of the contaminant).  Moreover, Defendants' admission that phthalates "may be present in the packaging materials and food processing equipment that produces the cheese and cheese powder" reinforces the inference that Defendants' Products sold with a cheese packet could plausibly contain phthalates.  See id. ("plaintiffs could establish plausible injury by pleading facts that 'raised a plausible inference that the Product was systematically contaminated such that any bottle of the Product, including the ones Plaintiffs purchased, likely contained PFAS'") (citing, inter alia, Onaka, 2023 WL 2663877, at *4-5).

In addition to Defendants' admissions concerning the presence of phthalates and the 2017 Coalition Study, Plaintiffs used independent testing to confirm the presence of phthalates in three of the products that remained in Plaintiff Stuve's possession from prior to her filing of her claims: Organic Shells & Real Aged Cheddar Mac & Cheese; Organic Shells & White Cheddar Mac & Cheese; and Organic Classic Cheddar Mac & Cheese.  (TAC ¶ 54.)  Since Franklin was purchasing Cheese Packet Products during the same general time period as Stuve, and Stuve's similar Products were tested and showed phthalates, this reinforces the plausible inference that at least one of the Cheese Packet Products purchased by Franklin during the same time period contained phthalates.  See Clinger, 2023 WL 2477499, at *6.

With regards to the Organic Cheesy Ravioli product, Franklin alleges she also purchased that Product "multiple times" throughout the applicable statute of limitations period.  (See TAC ¶ 62.)  Plaintiffs allege that on January 4, 2024, Consumer Reports published the findings of its investigation into the presence of dangerous substances such as phthalates in popular foods available in supermarkets and found that one of the highest levels of phthalates

existed in Defendants' Organic Cheesy Ravioli.  (Id. ¶ 30.)  The Consumer Reports testing occurred during the same period as Franklin was purchasing the Product.[4]  (Id. ¶ 62.)  Moreover, Plaintiffs' own testing of the ravioli Product in July 2024 confirmed the presence of phthalates.  (Id. ¶ 54) (stating the highest amount of a single phthalate in the ravioli).)  Taken together, these tests, which occurred during and only slightly after the time when Franklin was buying the ravioli, suffice to raise the plausible inference that she bought at least one ravioli Product that contained phthalates. See Clinger, 2023 WL 2477499, at *4 ("if the plaintiffs bought a particular sunscreen product reasonably near in time to the testing positive of that product for the presence of benzene, then it is at least plausible to conclude that the product purchased by the plaintiff was also contaminated with benzene").

In arguing that Plaintiff Franklin lacks standing, Defendants rely heavily on Hicks, 2023 WL 6386847, in which the court granted a motion to dismiss for lack of standing.  However, as Plaintiffs note, the plaintiffs in that case amended the complaint and the court then denied in part the motion to dismiss.  See Hicks v. L'Oreal U.S.A., Inc., 2024 WL 4252498 at *11 (S.D.N.Y. Sept. 19, 2024) ("Hicks II") (finding injury in fact sufficient to establish standing for certain Plaintiffs after additional testing performed on products allowed for plausible inference that there was a pervasive PFAS presence in the Products).  Moreover, in the Hicks cases, there was no admission by the defendant concerning the presence of the contaminant, whereas here Defendants allegedly made such an admission.  As to the Cheese Packet Products, the Defendants' recognition of the

---

[4] Plaintiffs cite in their TAC the webpage for the Consumer Reports study.  (See ¶ 30.)  That webpage also includes a link to a document outlining the test methodology that was used for this study.  See https://article.images.consumerreports.org/image/upload/v1704381057/prod/content/dam/surveys/Consumer_Reports_Test_Methodology_for_Bisphenols_and_Phthalates_in_Food_01-24.pdf.

That Test Methodology webpage states, inter alia, that Consumer Reports "purchased two or three samples of each product from supermarket and fast food chains mostly in New York, New Jersey, and Connecticut between February 2023 and April 2023."  This aligns with the time frame that Franklin alleges she was purchasing the ravioli in New York.  The Court takes judicial notice of this aspect of the Test Methodology, as it is linked to a document that is integral to the complaint (the Consumer Reports study).  See, e.g., Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

14

Coalition Study and acknowledgement of the presence of phthalates on their website, along with the independent testing of Plaintiff Stuve's Cheese Packet Products, are sufficient to establish a plausible inference of the presence of phthalates in Franklin's purchased products.  As to the ravioli, two separate independent tests (by Consumer Reports in early 2023 and Plaintiffs in July 2024) confirmed the presence of phthalates, and temporal proximity is satisfied under Hicks II by both the Consumer Reports testing and Plaintiffs' counsel's testing.  Id. at *11 ("Plaintiffs' allegations pertaining to the October 2023 Testing, considered along with the allegations pertaining to the Late 2021 Testing, allow for the plausible inference at this stage that there was a pervasive PFAS presence in the Products going back to 'late 2021.'").  Accordingly, the facts alleged in the TAC demonstrate that Plaintiff Franklin has standing to pursue her claims.

**B.**    **Plaintiffs' Misrepresentation Claims Are Dismissed**

Defendants next argue that Plaintiffs' misrepresentation claims fail at the threshold under the "reasonable consumer" doctrine.  To state a claim for false advertising under GBL sections 349 and 350, plaintiffs must plausibly allege: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citations omitted).  The second element requires the defendant's conduct be likely to mislead a "reasonable consumer." Mantikas v. Kellogg Co., 910 F.3d 633, 636 (2d Cir. 2018).  Under this standard, courts ask "whether a reasonable consumer, not the least sophisticated consumer, would be misled by Defendants' actions." Weinstein v. eBay, Inc., 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).

Defendants argue that Plaintiffs' misrepresentation claims should be dismissed for three reasons: (1) a reasonable consumer would not interpret any of Defendants' labelling claims to mean the Products are completely free of phthalates when the product labels say nothing regarding phthalates; (2)  none of the labelling claims are actionable because they are either true, puffery, or

barred by USDA organic foods preemption; and (3) the TAC's cited consumer survey does not transform implausible allegations into plausible ones.  (Defs.' Br. at 10.)  For the following reasons, Plaintiffs' misrepresentation claims are dismissed.

### 1.    Reasonable Consumer Doctrine

Plaintiffs alleged that the presence (or risk of) phthalates in the Products make it misleading for Defendants to label the products with claims of "No Artificial Flavors or Synthetic Colors," "No Preservatives," "Organic," "Made-with-Organic Ingredients," "Homegrown," "Made with Goodness!," "Real Cheese," "Organic cheese from cows raised without antibiotics or synthetic hormones,"  and "Cheese from Cows Not Treated with rBST."  (TAC ¶ 10.)  Notably, Plaintiffs do not allege that the Products mention phthalates or say anything about the presence or non-presence of phthalates.  Instead, Plaintiffs allege that the claims market Defendants' Products as "healthy, wholesome, and organic" and are therefore "misleading because, far from being healthy and wholesome, the Products contain (or risk containing) phthalates which are dangerous to one's health and well-being."  (Id. ¶¶ 9-13.)

Plaintiffs have not stated a plausible misrepresentation claim in this regard.  The alleged presence of a harmful substance does not prohibit a manufacturer from advertising a product's positive qualities.   For example, in George v. Starbucks Corp., the district court dismissed plaintiffs' claim that Starbucks misled consumers by claiming its baked goods contained "no artificial dyes or flavors" even though it used a "powerful pesticide" to terminate insects in its stores.  No. 19-CV-6185, 2020 WL 6802955, at *1–2 (S.D.N.Y. Nov. 19, 2020), aff'd, 857 F. App'x 705 (2d Cir. 2021).  The pesticide was not an artificial dye or flavor, and "[n]o reasonable consumer would understand that statement to convey any information about the company's use or non-use of pesticides in its stores."  Id. at *5.  Similarly, the claims on the Products do not misleadingly suggest that they do not contain phthalates.  Plaintiffs argue that this case is

distinguishable from George because a reasonable consumer could interpret the Products' claims as "affirmative assertions of healthiness of the products." (Pls.' Opp. at 17-18.) However, just as the pesticide in George could not be considered an "artificial dye[ ] or flavor[ ]," a reasonable consumer viewing the Products' claims in this case would not make assumptions regarding the presence or absence of phthalates. See Axon v. Fla.'s Naturals Growers, Inc., 813 F. App'x 701, 705 (2d Cir. 2020) ("[I]t is not plausible to allege that a reasonable consumer would interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of glyphosate as a result of the planning and cultivation of oranges in its product."). Thus, the claims on the Products in this case do not misleadingly suggest that they do not contain phthalates.

In another similar case alleging that Kraft Mac & Cheese misled consumers regarding the alleged presence of phthalates in its products, the court relied on the reasoning in George to dismiss similar misrepresentation claims. See Stuve v. Kraft Heinz Co., 2023 WL 184235, at *10 (N.D. Ill. Jan. 12, 2023). In Stuve, the plaintiffs alleged that the presence (or risk of) phthalates in Kraft Mac & Cheese made it misleading for Kraft Heinz to label the product as containing "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes." Id. The court found that Plaintiffs' misrepresentation claim was not plausible, as no reasonable consumer would understand those statements to convey any information about the presence or non-presence of phthalates in the referenced products. Id. Similarly, here, none of the Products' labeling conveys information regarding the presence or non-presence of phthalates such that it would be likely to mislead a "reasonable consumer."

Plaintiffs attempt to draw a comparison to Buonasera v. Honest Co., 208 F. Supp., 3d 555 (S.D.N.Y. 2016), a case in which the court denied a motion to dismiss where the plaintiff alleged that label statements such as "natural" and contains "no harsh chemicals ever!" were false and misleading because the products "contain[ed] synthetic and toxic ingredients." Id. at 559.

However, the plaintiff in <u>Buonasera</u> alleged that the labelling was false because it explicitly stated that the product was "natural" and contained "no harsh chemicals," assertions that were blatantly at odds with the alleged presence of toxic ingredients in the products. <u>Id.</u> Here, by contrast, Plaintiffs do not allege that any of the challenged statements make assertions about phthalates at all. Nor do the challenged statements represent that the Products are completely free from harmful chemicals. In this context, a reasonable consumer would not be misled about the presence of phthalates based on affirmative claims that do not mention phthalates at all. Additionally, the misrepresentation claims fail on other grounds, as discussed below.

### 2. Non-Actionable Claims

Even if the Court found that Plaintiffs' misrepresentation claims did not fail at the threshold under the "reasonable consumer" doctrine, it would still dismiss the misrepresentation claims as non-actionable. Defendants argue that none of Plaintiffs' misrepresentation claims are actionable because the allegedly misleading statements are either true, puffery, or barred by USDA organic foods preemption. (Defs.' Br. at 10.) <u>First</u>, Defendants argue that Annie's organic certifications and claims regarding "No Artificial Flavors or Synthetic Colors," "No Preservatives," "Cheese from Cows Not Treated with rBST," "Organic cheese from cows raised without antibiotics or synthetic hormones," "Made with Real Cheese," and "Real Cheese" are objectively true and not misleading. The Court agrees, as Plaintiffs do not claim the Products contain artificial flavors or are made from cows treated with rbST. Nor do Plaintiffs allege that phthalates are artificial flavors, colors, preservatives, or rbST. <u>See</u> <u>George</u>, 2020 WL 6802955, at *2 (labelling claim "no artificial dyes or flavors" found not actionable because "DDVP is not an artificial dye or flavor"). Furthermore, the alleged presence of phthalates in the Products does not render the cheese in the Products not "Real Cheese." Therefore, and because no reasonable consumer would understand

these statements to convey any information about the presence or absence of phthalates in the Products, these statements cannot support Plaintiffs' misrepresentation claims.

Second, Defendants argue that the Products' brand name "Annie's Homegrown" is a non-misleading brand name because no reasonable consumer would interpret this brand label as meaning that the Products contains no traces of phthalates. (Defs.' Br. at 14.) The Court agrees that in this context, it is not plausible that a reasonable consumer would interpret the brand name "Annie's Homegrown" as meaning that the product contains no traces of phthalates. See Axon, 813 F. App'x at 705 (affirming district court's dismissal of complaint and finding that a reasonable consumer would not interpret the brand label 'Florida's Natural' as meaning that the product contains no traces of glyphosate as a result of the planting and cultivation of oranges in its product.)

Third, Defendants argue that the labelling claims "Bunny of Approval," "Rabbit of Approval," and "Made with Goodness" are non-actionable puffery. (Defs.' Br. at 14.) The Court agrees. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language"—an express of opinion, not a promise—and therefore nonactionable. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159–60 (2d Cir. 2007). For example, claims like "The Taste You Love" and "Gooey, Cheesy Goodness" on a macaroni and cheese product are "textbook puffery" and do not suggest to a reasonable consumer that the product is "wholesome, safe, and healthy" and sans phthalates. Stuve, 2023 WL 184235, at *11. The claims here are similar puffery, as they do not convey any measurable assertions about the Products. Rather, as in George, it is fanciful jargon that "vaguely assert[s] that [Annie's mac & cheese] is better than its competitors' in a manner best 'understood as an expression of the seller's opinion only.'" 857 F. App'x at 706. Therefore, no reasonable consumer would interpret these claims as meaning that the Products are free from phthalates.

Fourth, Defendants argue that Plaintiffs' claims regarding the phrases "Organic" and "Made-with-Organic Ingredients" are preempted under the Organic Foods Production Act since they were certified organic by Annie's certifying agent. (Defs.' Br. at 16.) Plaintiffs respond that they do not challenge Defendants' organic representations as false, and instead allege that Defendants' overall labelling scheme touts the Products as healthy and wholesome despite the presence of harmful chemicals. (Pls.' Opp. at 18.) According to Plaintiffs, "when these representations are viewed among all the Products' claims, Defendants' packaging is misleading." (Id.) For the reasons discussed supra, the Court finds that these statements along with the Products' labelling as a whole are not likely to mislead a reasonable consumer into believing that phthalates are not present in the Products.[5]

### 3.    Plaintiffs' Consumer Survey

Finally, Defendants argue that the TAC's cited consumer survey does not transform Plaintiffs' implausible misrepresentation allegations into plausible ones. (Defs.' Br. at 17-19.) The Court agrees, as the survey does not speak to whether the specific label claims challenged in the TAC are misleading to a reasonable consumer. (See TAC ¶¶ 46–51; Axon, 813 F. App'x at 704 (affirming dismissal in spite of proffered survey that did not address whether consumers were misled by Florida's Natural brand name given the presence of trace glyphosate in the products); see McGinity v. Procter & Gamble Co., 69 F.4th 1093, 1099 (9th Cir. 2023) (affirming dismissal despite survey that "does not adequately address the primary question [of deception] in this case"). While the consumer survey asked whether the participants would expect phthalates in the Product, it did not ask if the participants would interpret the challenged phrases (e.g., "Organic", "Real Cheese") as a promise that the product is free of phthalates. See, e.g., Mazella v. Coca-Cola Co.,

---

[5] If Plaintiffs were challenging Defendants' "Organic" representations as false, the Court would find such allegations preempted by the OFPA as per the Second Circuit's decision in Marentette v. Abbott Laboratories, Inc., 886 F.3d 112, 118 (2d Cir. 2018); 7 U.S.C. §§ 6503(d), 6504(3), 6514–15; see also Defs.' Br. at 16-17.

548 F. Supp. 3d 349, 358 (S.D.N.Y. 2021) (dismissing GBL claims when plaintiff's consumer survey data failed to "support the conclusory statement that 'Slightly Sweet' on the Product label leads reasonable consumers to assume the Product is low in sugar or calories and not simply a description of the beverage's taste"). Therefore, for the reasons discussed <u>supra</u> in Sections III.B.1 and III.B.2, Plaintiffs' misrepresentation claims are not plausible, and the consumer survey cited in the TAC cannot resuscitate their allegations that the labels are misleading.

**C.      Plaintiffs' Omission-Based Claims Survive**

Defendants next argue that Plaintiffs' omission-based claims are preempted by federal law and fail under New York law. (Defs.' Br. at 19-23.) First, Defendants argue that the Nutrition Labeling & Education Act ("NLEA"), 21 U.S.C. § 343 et seq., expressly preempts Plaintiffs' claims. (<u>Id.</u> at 19-22.) Second, Defendants argue that the omission-based claims fail because Plaintiffs have not adequately alleged that Annie's "alone" possessed material knowledge about the presence (or risk) of phthalates. (<u>Id.</u> at 22-23.) For the following reasons, the Court denies Defendants' motion to dismiss Plaintiffs' omission-based claims.

**1.      Preemption under the Nutrition Labeling & Education Act**

The NLEA includes a broad express preemption provision directing that "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for . . . labeling of food . . . that is not identical to the requirement[s]" imposed by federal law. 21 U.S.C. § 343-1(a). The phrase "not identical to" means that the state requirement may not impose, either directly or indirectly, obligations not imposed by the statute or FDA's implementing regulations. 21 C.F.R. § 100.1(c)(4). Because identity, not consistency, is the test, a plaintiff cannot avoid preemption by arguing that the state-law labeling requirement is merely "consistent with the requirements imposed by the Food, Drug, and Cosmetic Act" ("FDCA"). <u>Turek v. Gen. Mills, Inc.</u>, 662 F.3d 423, 427 (7th Cir. 2011). Said differently, "[s]tates can impose requirements

that are identical to those imposed by the FDCA, but not different from or more burdensome than those requirements." Harris v. Topco Assocs., LLC, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (citing Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am., Inc., 24 F. Supp. 3d 750, 758 (N.D. Ill. 2014)); see also In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig., 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) (noting that, under 21 C.F.R. § 100.1(c)(4), "state law cannot impose obligations beyond, or different from, what federal law requires").   Thus, if Defendants label the Products in a manner "expressly permitted by FDA regulations," Plaintiffs' labeling claims are preempted.  Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013).

Defendants argue that Plaintiffs' claims are preempted because the FDA exempts Defendants from disclosing the alleged presence of phthalates on the Products' labels.  The FDA has issued a regulation exempting manufacturers from the obligation to disclose "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food." 21 C.F.R. § 101.100(a)(3).   "Incidental additives" include "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food" so long as they are "not food additives," or, if they are food additives, "are used in conformity with regulations established pursuant to section 409 of the act." 21 C.F.R. § 101.100(a)(3)(iii). According to Plaintiffs' allegations, phthalates "leach into food from plastic equipment used in food processing and preparation as well as in food packaging materials."   (TAC ¶ 25.) Accordingly, the phthalates in the Products are incidental additives.  Defendants contend that they use phthalates in conformity with the FDA regulations implementing the FDCA, in that those regulations permit the use of phthalates in food contact applications and packaging equipment. (Defs.' Br. at 21-22.)  Defendants thus claim they are exempt from disclosing the presence of the phthalates in the Products under 21 C.F.R. § 101.100(a)(3)(iii).

The Court cannot determine on the pleadings alone that this exemption applies, because whether phthalates are present only at an "insignificant level" is a question of fact that is yet to be resolved.  Plaintiffs note the analysis in Holt v. Foodstate, Inc., No. 15-CV-78, 2015 WL 9592534 (S.D. Cal. Dec. 31, 2015).   The Holt plaintiffs alleged that the defendant's vitamin products contained "'magnesium stearate, calcium stearate, or any other stearate/stearic acid' that 'may be harmful and undesirable to consumers,'" but the products' labels omitted any mention of these substances.  Id. at *1.   Like Defendants here, the Holt defendant argued that the NLEA and 21 C.F.R. § 100.100(a)(3)(iii) expressly preempted the plaintiffs' claims.  Id. at *3.   The court disagreed, concluding that whether the allegedly harmful incidental additives were present in "insignificant levels" was a question of fact more appropriate for summary judgment or trial.[6]  Id.

In Stuve, the defendant, Kraft, argued that 21 C.F.R. 101.100(a)(3)(iii) exempted it from disclosing that phthalates were present in its macaroni and cheese products.  2023 WL 184235, at *7.  The court declined to find preemption of several state law consumer claims, stating that it could not determine whether the exemption applied at the pleading state because "whether phthalates are present only at an 'insignificant level' is a question of fact, yet to be resolved."  Id. (citing Holt, 2015 WL 9592534 at *4).  As in Stuve, Plaintiffs here do not concede that the phthalate presence is at "insignificant levels."  This question is factual and not suited to resolution on a 12(b)(6) motion to dismiss.

### 2.    Plaintiffs Have Sufficiently Pled Omissions Claims

Defendants next argue that Plaintiffs' omissions claims fail because "Annie's did not *alone* possess information about the possible presence of phthalates."  (Defs.' Br. at 22.)  New York applies the "exclusive or superior knowledge test" to omission claims under the GBL.  In re Lindt

---

[6] The Holt court also found that legislative history shows that the NLEA does not preempt "false or misleading label" claims.  Id. at *4 (recognizing that the express preemption section of 343-1 does not enumerate "false or misleading label" suits).

& Sprungli (USA), Inc., Dark Chocolate Litig., No. 23-CV-1186, 2024 WL 4107244, at *6 (E.D.N.Y. Sept. 6, 2024). A "plaintiff bringing an omission-based claim for [GBL] § 349 liability" must plausibly plead that "'the business alone possesses material information that is relevant to the consumer and failed to provide this information,' or that plaintiffs could not 'reasonably have obtained the relevant information they now claim the defendant failed to provide.'" Paradowski v. Champion Petfoods USA, Inc., No. 22-CV-962, 2023 WL 3829559, at *2 (2d Cir. June 6, 2023) (quoting Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20 (1995)). In a seminal case concerning omissions under the GBL, the New York Court of Appeals held that although the GBL "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation," omissions may be actionable where there is a question about whether "plaintiffs possessed or could reasonably have obtained the relevant information they now claim the [Defendant] failed to provide." Oswego, 85 N.Y.2d at 26-27. Here, Plaintiffs have plausibly alleged omissions claims.

Defendants' arguments concerning the publicly available knowledge of the risk of phthalates in the Products do not defeat Plaintiffs' omission-based claims. In Lindt, the defendant made the same argument as here, that publicly released information, including publications by the FDA, precluded an omission claim. 2024 WL 4107244, at *6. The court rejected this argument because some of the relevant time period was before the public information was available and even afterwards, "the plaintiffs have nonetheless plausibly alleged that a consumer could not reasonably have been expected to obtain the relevant information regarding lead and cadmium content in Lindt's dark chocolate bars." Id. at n.6. As in Lindt, the Court's analysis "is limited to the four corners of the complaint," which establishes that Plaintiffs have plausibly alleged that a consumer could not reasonably have obtained information regarding the amount of phthalates in Defendants'

products.  See id. at *7; see also Levy v. Hu Prods. LLC, No. 23-CV-1381, 2024 WL 897495, at *6 (S.D.N.Y. Mar. 1, 2024) (rejecting similar argument by the defendant based on information supposedly in the public domain "rais[ing] alarm bells" "as early as 2006" by "the FDA and other third parties" and stating that such a ruling cannot be made before a full factual record is before the court).  Dismissal is therefore premature, as a fully developed factual record is necessary to determine what a reasonable consumer could have discovered regarding the amount of phthalates present in the Products during the relevant time period.

While Defendants admitted in their FAQ response in 2017 that their Cheese Packet Products had been tested, Plaintiffs allege that they did not have access to such tests nor could they have obtained information regarding the amount of phthalates present in the Products.  (TAC ¶¶ 8, 19, 52.)  For the cheesy ravioli Product, the Consumer Reports article was not available until 2024, long after Plaintiff Franklin had been purchasing it, and Plaintiffs allege that no consumers would have had access to any information about the amount of phthalates in that Product.  (Id. ¶ 31, 37, 44.)  While discovery may reveal otherwise, the Court, drawing all reasonable inferences in Plaintiffs' favor, cannot dismiss the omissions-based claims at this juncture.  At a minimum, these are issues of fact that cannot be resolved on this motion.  See Levy, 2024 WL 897495, at *6; see also Hernandez v. The Wonderful Co. LLC, 23-CV-1242, 2024 WL 4882180 (S.D.N.Y. Nov. 25, 2024) (denying motion to dismiss omission-based claim where plaintiffs alleged that Defendants knew that PFAS were in the Product and that PFAS had harmful effects); Winans, 731 F. Supp. 3d at 430 (denying motion to dismiss omission-based claim where plaintiffs had alleged that defendant knew of the PFAS presence and defendant took actions indicating that it may have suspected that the PFAS could migrate from the packaging to the product.)  Therefore, Defendants' motion to dismiss Plaintiffs' omission-based claims is denied.

**D.**    **Breach of Express Warranty, Negligence Per Se, and Unjust Enrichment**

Defendants argue that because Plaintiffs' common law claims are based on the same theory of deception as their GBL claims, their common law claims are all subject to the reasonable consumer standard and fall alongside their statutory claims. (Defs.' Br. at 23.) Defendants also raise further arguments that are specific to each of the common law claims in furtherance of their motion to dismiss these claims. (Id. at 23-25.) The Court addresses these issues in turn.

1.    **Breach of Express Warranty**

To state a claim for breach of express warranty, a plaintiff must allege, inter alia, "the existence of a material statement amounting to a warranty" on which the plaintiff relied. Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014). Here, Plaintiffs do not identify an express warranty relating to phthalates. As the Court discussed supra Section III. B, the Products' labelling claims say nothing whatsoever about phthalates—and certainly do not constitute an express warranty that the Products are free from phthalates. See Stuve, 2023 WL 184235, at *12 ("gooey, cheesy goodness," "NO Artificial Preservatives," "NO Artificial Flavors," and "NO Artificial Dyes" claims were not an express warranty that macaroni and cheese was "wholesome, safe, healthy and free from dangerous and artificial substances like phthalates"); Axon, 354 F. Supp. 3d at 185 ("natural" representation was a "[g]eneralized statement by defendant," not a warranty "that the product was free from trace glyphosate"). Therefore, Plaintiffs' breach of express warranty claim is dismissed.

2.    **Negligence Per Se**

Plaintiffs allege that Defendant Annie's is liable for negligence per se for allegedly violating FDCA and New York Agriculture and Markets Law provisions regarding "adulterated" and "misbranded" food. (TAC ¶¶ 103–111.) Defendants point to the economic loss doctrine, noting that "it is well settled that New York law holds that a negligence action seeking recovery

for economic loss will not lie." <u>Colangelo v. Champion Petfoods USA, Inc.</u>, No. 2020 WL 777462, at *15 (N.D.N.Y. Feb. 18, 2020) (dismissing negligence <u>per se</u> claim as barred in case alleging false and misleading advertising labeling of contaminated pet food); <u>Vitolo v. Dow Corning Corp.</u>, 651 N.Y.S.2d 104, 105 (App. Div., 2d Dep't 1996) (affirming dismissal of negligence <u>per se</u> claims under the economic loss doctrine). Plaintiffs argue that Defendants owed statutory duties under the FDCA and New York Agriculture and Markets Law to protect Plaintiffs from the harm complained of herein, and that the existence of these statutory duties renders the economic loss doctrine inapplicable. (<u>See</u> Pls.' Opp. at 29-30.) However, Plaintiffs have not identified any cases in the products liability context where the economic loss doctrine did not apply because of the alleged existence of certain statutory duties. Therefore, Defendants' motion to dismiss the negligence <u>per se</u> claim is granted.

### 3.    Unjust Enrichment

Defendants argue that Plaintiffs' unjust enrichment claim fails because it is duplicative of their statutory and common law claims. (Defs.' Br. at 25.) However, "[t]he elements for an unjust enrichment claim are distinct from the elements for GBL claims under §§ 349 and 350." <u>Warner v. StarKist Co.</u>, 2019 WL 1332573, at *7 (N.D.N.Y. Mar. 25, 2019). "In contrast to a claim for unjust enrichment, a claim for violating NYGBL § 349 requires '[p]roof that [a] defendant's acts are directed to consumers[.]'" <u>McCracken v. Verisma Sys.</u>, 2017 WL 2080279, at *22 (W.D.N.Y. May 15, 2017) (quotation omitted). "Thus, a reasonable trier of fact could find the elements for unjust enrichment without establishing all the elements for Plaintiffs' NYGBL § 349 claim." <u>Id.</u>; <u>see also</u> <u>Winans</u>, 2024 WL 1741079, at *6 (declining to dismiss unjust enrichment claim "[b]ecause it is conceivable that [plaintiff] might lose on her GBL claims but prevail on her unjust enrichment claim"). Therefore, Defendants' motion to dismiss the unjust enrichment claim is denied.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.  The Court dismisses Plaintiffs' misrepresentation, breach of warranty, and negligence per se claims.  The Court denies Defendants' motion to dismiss Plaintiffs' material omissions and unjust enrichment claims.  Defendants' pleading in response to the claims that survive this ruling is due on October 10, 2025.

**SO ORDERED.**

Dated:    September 10, 2025
          Central Islip, New York

_____
          /s/ (JMA)
          JOAN M. AZRACK
          UNITED STATES DISTRICT JUDGE

28